[PHILADELPHIA, FEBRUARY 4, 1831.]

## SNOWDEN and another *against* WARDER.

### IN ERROR.

Evidence is admissible to prove, that by custom or usage, in Philadelphia, on the pur-chase and sale of cotton, the vendor shall answer to the vendee for any latent defect in the article sold, though there be neither warranty nor fraud on the part of the vendor.

A party who alleges error in the admission of evidence by the court below, must shew in his bill of exceptions what the evidence was; otherwise the exceptions to it will be considered as waived.

ERROR to the Court of Common Pleas of the city and county of *Philadelphia.*

On the trial of this cause, the plaintiff below, *William S. Warder,* offered evidence to prove, that it is the custom of trade in *Philadelphia,* in respect to the purchase and sale of cotton, that the vendor shall answer to the vendee for any latent defect in the article sold, which shall upon examination be discovered, without either warranty or fraud on the part of the vendor. He also offered evidence to prove such custom, where the damage arises from fraud in pack-ing, on the part of the exporter of the article, unknown to the vendor.

He further offered evidence to prove, that by the custom of trade in *Philadelphia,* the vendor of certain other merchandise is liable to the vendee for any latent defect in the article sold, without war-ranty or fraud on the part of the vendor.

To the admission of all this evidence, the counsel for the defendants below objected, but a majority of the court, composed of the two as-sociates, (HALLOWELL, President, not concurring with them,) admit-ted the evidence, and at the request of the counsel of the defendants below, sealed a bill of exceptions.

After the evidence above stated had been admitted, and it had been proved that the defendants below, had sold to the plaintiff be-low, fifty bales of cotton, of which a portion was damaged, the counsel for the defendants requested the court to instruct the jury as fol-lows:

*First.* That the defendants, as vendors of merchandise within the city of *Philadelphia,* were not by law liable to the plaintiff as vendee, for any latent defect or damage in the article sold, unless there be a warranty by, or fraud on the part of said vendors.

*Second.* That a custom among traders in the city of *Philadelphia,* that the vendor of merchandise shall be liable to the vendee for any latent defect or damage in the article sold, without warranty or

(Snowden *v.* Warder.)

fraud on the part of such vendor, is contrary to law, and not binding on the defendants.

*Third.* That a custom among traders, engaged in buying and selling cotton within the city of *Philadelphia,* that the vendor shall be liable to the vendee for any latent defect or damage in the cotton sold, without warranty, or fraud on the part of the vendor, is contrary to law, and not binding on the defendants.

*Fourth.* That a custom among traders in the city of *Philadelphia,* that the vendor of cotton shall be liable for fraud in the packing, with which the said vendor had no privity, connexion or knowledge, and in the absence of any warranty or fraud by such vendor, is not sufficient in law to charge the loss in consequence of such fraud on the vendor, nor is such custom binding on the defendants.

*Fifth.* That a custom, to be good and sufficient in law, must have been immemorial and uniform, and must be certain, compulsory and reasonable, and is not binding on the defendants, unless possessing all these qualities.

The majority of the court, composed of the two associates, refused to charge the jury upon any of the said points, according to the request of the counsel for the defendants, but delivered their opinion as follows:

*First.* That the evidence proved a custom, by which the plaintiff could recover, if he had brought himself within it, without warranty or fraud on the part of the defendants.

*Second.* That whether he had brought himself within it, was a question of fact for the jury, depending, among other things, on the question whether the damage had been discovered, and the defendants notified of it in a reasonable time.

*Third.* That if the plaintiff knew the defendants were consignees or agents in the sale made by them to him, and if they had before the discovery of damage, and demand made, settled with and remitted the proceeds to their principal, the defendants were not responsible.

To this opinion also, the defendents counsel excepted.

*Chew* for the plaintiffs in error, contended that no evidence can be legally admitted to establish a custom, in a particular portion of the state, and not extending to the state at large. It has been repeatedly decided in this country as well as in England prior to the Revolution, that such a custom cannot be proved. *Edie* v. *The East India Company,* 2 *Burr.* 1222. *Stoever* v. *Whitman,* 6 *Binn.* 416. *Thompson* v. *Ashton,* 14 *Johns.* 316. *Dunhower* v. *Bull,* 16 *Johns.* 375. *Seixas* v. *Wood,* 2 *Caines,* 54. *Perry* v. *Aaron,* 1 *Johns.* 132. *Jackson* v. *Wetherill,* 7 *Serg. & Rawle,* 480. In *Gordon* v. *Little,* 8 *Serg. & Rawle,* 533, it is true, evidence was held to be admissible, tending to show the custom with respect to the liability of common carriers on the western waters of this state, but the opinion of the court on this point was not unanimous, and Chief Justice TILGHMAN, who was one of the majority, said, that a party who sets up a custom, must satisfy the

(Snowden *v.* Warder.)

the court that the case is not embraced by the general rules of law. There was no general rule of law which extended to carriers on the western waters, and therefore evidence of custom was received. The same observation may be made with respect to the way going crop, as to which, a custom was allowed to be proved, in *Stultz* v. *Dickey*, 5 *Binn.* 285. The distinction is between cases in which there is, and those in which there is not a general rule of law. With respect to the case before the court, the general rule of law is well established, and cannot be controverted by evidence of custom.

But supposing evidence to be admissible to prove a custom of trade, relating to the article which was the subject-matter of the contract, the admission of evidence to prove a custom as respects merchandise of a different kind was clearly wrong.

The court did not hear *M'Ilvaine*, who was of counsel for the defendant in error.

The opinion of the court was delivered by

Ross, J.—The common law readily adapts itself to the regulation of the various and complicated transactions of civilized communities. If any alteration in the condition and habits of society require the introduction of new principles, the common law receives such modifications, as correspond to the change in the different departments of social and civilized life. This is a safe mode of legislating, and not liable to error. If a custom or usage be not universal in its operation, the common law nevertheless permits that class of citizens, who have adopted it in their dealings with each other, to avail themselves of it in construing and enforcing their contracts or agreements, unless, indeed, it be mischievous in its nature, or contrary to the general policy of the law.

The common law is truly entitled to our highest veneration; and, although it has been said by some to have been instituted by *Brutus*, the grandson of *Æneas*, and the first king of *England*, who died when *Samuel* was judge of *Israel*, and who wrote a book in the *Greek* tongue, which he called *The Laws of the Britons*, and which he had collected from the laws of the *Trojans*, it is nevertheless not entitled to our veneration on account of its antiquity; for nearly all that is valuable in it is comparatively of modern date. (*See Preface to Third Reports*.) Neither is it entitled to our respect on account of the ancient, absurd, and superstitious modes of trial; none of which have the slightest resemblance to our present trial by jury. Still less is it entitled to our admiration on account of the feudal system, which imposed a restraint upon every effort to improve the jurisprudence of the country, and which prevented the adoption of those maxims of justice and equity, which now render it the admiration of the enlightened jurist, and the favourite of the people. It is, however, entitled to our veneration, because it has, within the last two centuries, been moulded by the wisdom of the ablest statesmen, and a succession of learned and liberal minded judges, into a flexible system, expanding

and contracting its provisions, so as to correspond to the changes that are continually taking place in society, by the progress of luxury and refinement. As the youthful skin of a vigorous child expands with its growth, and accommodates itself to every developement, which the body, in its progress to maturity, makes of its powers, capacities and energies, so does the common law, in order to suit the exigencies of society, possess the power of altering, amending, and regenerating itself. It has been truly and eloquently said, that "it is the law of a free people, and has freedom for its end; and under it we live both free and happy. When we go forth it walks silently and unobtrusively by our side, covering us with its invisible shield from violence and wrong. Beneath our own roof, or by our own fireside, it makes our home our castle. All ages, sexes and conditions, share in its protecting influence. It shadows with its wings the infant's cradle, and with its arm upholds the tottering steps of age." It is the duty of the judiciary not only to guard it with vigilance against incongruous innovations, but also to extend the operation of its principles, so as to embrace all the new and various interests, which arise among an active and enterprising people. Thus much for the common law.

In this case, the questions presented for decision are found in the first two exceptions to the admission of evidence offered to prove the custom or usage in *Philadelphia,* with respect to the purchase and sale of cotton, *viz.* that the vendor shall answer to the vendee for any latent defect in the article sold; and also in the exceptions to the charge of the court on the evidence so admitted. As there is but one question presented by these exceptions, they will all be considered together. If the evidence were properly admitted, the defendant has no right to complain of the charge of the court; for if there be error in it, it consists in the charge being too much in his favour. The third exception should have set forth the evidence, which the court decided was admissible. This was necessary to enable us to determine whether the evidence was improperly received. This court will not presume that evidence was erroneously received. It rests with those who assign the error, to spread before us that which is alleged to constitute the error. On failure to do so, we must consider the point as waived. I will, however, on this point refer to *Starkie's Evid.* part. 4th, page 453, where it is stated, that the manner of carrying on trade in one place may be evidence of the mode of carrying it on in another. For this position he refers to *Noble* v. *Kennoway, Doug.* 510-13.

In the quaint language of Sir *Ed. Coke,* " *Consuetudo* is one of the main triangles of the laws of *England :* those laws being divided into Common Law, Statute Law, and particular customs, for if it be the general custom of the realm, it is part of the Common Law."—*Co. Lit.* 113-15.

It is contended, that the evidence was admitted to prove a custom of the trade inconsistent with the provisions of the common law. I

(Snowden *v.* Warder.)

think on a full examination of the subject, it will be found perfectly in accordance with the common law. But, even, if it be otherwise, was there any error in admitting the evidence for the purpose of showing the understanding of the parties to the contract? *Littleton,* in sect. 169, page 112, says, " a custom used upon a certain *reasonable cause* depriveth the common law ;" and the comment of *Coke* is to the same effect. He says, " custom or prescription can take away all the force of an act of Parliament;" and with this the doctrine in 1 *Col. Jurid.* 23, is perfectly in accordance. It is there stated, that by the statute 10 *Edw.* 3. c. 3, it is ordained, that all justices of Oyer and Terminer, &c. shall first make oath, &c. Precedent and usage prevailed over the statute ; for no such oath prescribed by the statute was ever taken. In *England* there are four courts, formerly included in one, called the *aula regis,* which followed the king. They are now divided into Chancery, King's Bench, Common Pleas, and Exchequer, by custom alone. 1 *Col. Jurid.* 22. And among the enormous powers of the Chancellor, that which he exercises at his pleasure, of calling upon the judges to assist him in the decision of any perplexed and difficult case, it is believed, depends upon custom alone. All the pleadings, which are said to be the pillars of the common law, rest on no better foundation than custom, varying according to the circumstances of each particular case, to which they are applied.

Particular customs are to be proved. *Co. Lit.* 115. *b.* In *Vanhearth* v. *Turner, Winch. Rep.* 24, HOBART, C. J. says, " the custom of merchants is part of the common law of this kingdom, of which the judges ought to take notice ; and if any doubt arise to them about the custom, they may send for the merchants to know their custom, as they send for the civilians to know their laws." So in the case of *Pickering* v. *Barkley,* 1 *Styles,* 132, a question arose, whether taking by pirates was a peril of the sea. Merchants and experienced mariners were examined to ascertain the construction of a written contract. It is manifest from the authorities cited, that the custom of merchants may be proved, although inconsistent with the common law ; and that a statute or the common law may be abrogated, modified, or altered by usage and custom. The custom of merchants was at first confined to foreign bills of exchange drawn by merchants, then extended to inland bills, and finally it has been held to extend to all joint traders of every description, for the purpose of excluding survivorship. *Jefferies* v. *Small,* 1 *Vern.* 217. See *Stark. Evid.* 453, and cases there cited in the notes.

In the case of *Donaldson* v. *Forster, Abbot's Law of Ship.* 213, it was stipulated, that the merchant should have the exclusive use of the ship outwards, and the exclusive privilege of the cabin, the master not being allowed to take any passengers. The defendant insisted, that under a charter party so worded, it was the constant usage of the trade to allow the master to take out a few articles for private

(Snowden v. Warder.)

trade. *Ld. Kenyon* admitted evidence to be given to prove this usage ; and said he thought the deed might be explained by uniform and constant usage; the usage being a tacit exception to the deed. *Starkie*, it is true, seems to think some doubt may still be entertained, whether the receiving such evidence be strictly warranted in principle, but that doubt seems to be limited to cases of written contracts.

To these authorities I will add one or two of more recent date, selected from the numerous decisions to the same effect, which are to be found in the books of reports. In the case of *Van Ness* v. *Pacard*, 2 *Pet. U. S. Rep.* 148, evidence was admitted to prove, that a custom and usage existed in the city of *Washington*, which authorised a tenant to remove any building erected by him. So in the case of *Osgood* v. *Lewis*, 2 *Har. & Gill*, 495, a great variety of proof was admitted to show the understanding of dealers in winter-strained sperm oil. In *Smith & Stanley* v. *Wright*, 1 *Caines' Rep.* 44, the usage against the allowance of average to goods placed on the deck of the vessel, was proved by the testimony of several insurance brokers and merchants of long standing, some of whom carried it back thirty years, a period, say the court, too short to establish a custom or usage, but they add, *"that the true test of a commercial usage, is its having existed a sufficient length of time to have become generally known, and to warrant a presumption, that contracts are made in reference to it."* In the case of *Whipple* v. *Lovitt*, 2 *Mass. Rep.* 89, proof was admitted to show whether the words, *"factory prices"* had acquired any uniform technical meaning, in the sense contended for. In *Loring* v. *Gurney*, 5 *Pick. Rep.* 15, it has been held, that a usage of an individual known to the person with whom he deals, may be given in evidence to prove what was the contract between the parties. In *Gordon & Walker* v. *Little*, 8 *Serg. & Rawle*, 533, it was decided, that evidence of usage or custom fixing the construction of the words, " *inevitable danger of the river*," in a bill of lading for the transportation of goods by inland navigation, is admissible ; and that usage or custom varying the *liability* of a common carrier by water from that of the common law, may be proved. In page 550, C. J. TILGHMAN says, " the parties have a right to alter or modify the common law, by a special contract;" and in page 565, Justice DUNCAN says, " the carrier may limit by contract the *extent* of his *liability*." So the usage and custom on particular waters may abridge and confine it, and such usage, in the absence of a special written contract, would control the general custom or law of England. It would be the adoption of a custom or law of the English realm ; and, he adds, that his opinion is, that if such a usage had been clearly proved, it would have controlled the general rule of law, because it would be evident, that the parties contracted with a view, and in relation to, the particular usage. See 2 *B. & A.* 746, *Webb* v. *Plumer.* 2 *Eng. Com. Law Rep.* 359. 7 *Eng. Com. Law Rep.* 203, and also a

(Snowden *v.* Warder.)

note to *Yeates* v. *Pim*, in 3 *Eng. Com. Law Rep.* 39. *Stark. Ev.* 1039, and the cases there cited.

There is no rule of law better settled, than that the intention of the parties to a contract shall prevail unless inconsistent with some well established principle of law. The intention of the parties will not be carried into effect, if the contract be to do any immoral act; or if it be to omit the performance of any moral or official duty; or if it be contrary to the general policy of the laws, as, to take more than six per cent. interest; or if it be in contradiction of the statute of frauds, or to defeat the operation of the revenue laws, &c. But a contract will be binding and carried into effect, if it be not inconsistent with morality, policy, or the duties which we owe to the community; in a word, if it be not to do something either *malum in se,* or *malum prohibitum,* although such contract contravene or control the common or statute law of the land.

I therefore feel justified in laying it down as law,

1. That the parties may make a contract contrary to the provisions of the law, under the restrictions adverted to, or those of a similar character.

2. That wherever the parties may make a contract dispensing with, or controlling the provisions of the common law, the custom or usage of the trade will govern the construction of such contract, in all matters wherein it is silent.

3. That the true test of a custom or usage is its having existed a sufficient length of time, not only to have become generally known to the dealers, who are to be affected by it, but also to warrant the presumption, that contracts are made in reference to such usage or custom. And that this rule is not only applicable to commercial transactions, but also to the ordinary dealings between man and man; as for instance the right to take the way going crop; to retain or remove fixtures, and numerous other instances, which it is needless to mention.

4. That either party has a right to prove a custom or usage in reference to the subject-matter of the contract; and that therefore there was no error in admitting the evidence in this case.

The judgment must be affirmed.

GIBSON, C. J.—In *Gordon* v. *Little,* 8 *Serg. & Rawle,* 557, I expressed my reasons for wishing to discountenance the recognition of local customs in derogation of the general law; and it would add little to their force to repeat them here. I feared then, what I fear now, that the decision was the harbinger of a train of exceptions that would, in the end, sap the foundations of the common law, by affording a pretext for the very worst species of legislation to which a people can be exposed, and subjecting the rights of the citizen to the perilous influence of parol proof. I admit that contracts are particular laws which the parties prescribe to themselves; but as regards matters about which they are silent, the presumption is that they

(Snowden *v.* Warder.)

treat on the basis of the existing law, which they are bound to know, and not that of a particular usage, which they are not bound to know, and of which they may in fact be ignorant.   Where they contract in reference to the usage, that fact ought to appear expressly by the terms of the bargain; else there will be no safety: and in accordance with this principle, it has frequently been ruled by our courts, that usage is of no avail where the law is settled; instances of which may be found in *Wharton's Digest, Evidence,* Q.   I am of opinion, therefore, that the evidence ought not to have been admitted.

Judgment affirmed.