WILLIAM DICKINSON vs. WILLIAM B. S. GAY & another.

If manufactured goods are sold by sample, by a merchant who is not a manufacturer, and both the sample and the bulk of the goods contain a latent defect, there is no implied warranty against the defect, and evidence is inadmissible to show that by the usage of merchants the seller is responsible therefor; and if such sale is made through a commission merchant, who is not authorized to sell on credit, he must account to the consignor for the price, without deduction for such defect.

CONTRACT, containing several counts, some of which set forth that the defendants were indebted to the plaintiff in the sum of $1739.26, for the balance due for the price of goods sold by them for him, and others that they were indebted in the like sum for the balance due for goods sold and delivered by him to them.

At the trial in this court, before *Chapman*, J., many letters between the parties were introduced which, as the judge ruled, constituted a contract of agency between the parties, by which the defendants were to sell the goods for the plaintiff as his agents. The letters, however, contained no authority to sell on credit, and in this view the question whether the transaction was a sale to the defendants, or a consignment to them for sale on commission, became immaterial; and the letters are therefore omitted.

The goods in question were unprinted satinet cloths, purchased by the plaintiff of the manufacturer; and one case of them was sent as a sample by the plaintiff to the defendants, who sold the goods in controversy by the sample to J. H. Diggles & Co. of New York, and the bulk of them were, by the defendants' direction, sent to the purchasers by the plaintiff, without having been seen by the defendants. Diggles & Co. shortly afterwards gave notice to the defendants that the goods were not perfect, but were damaged by having been mildewed; and evidence was introduced tending to show that the bulk of the goods was not equal to the sample, that both the sample and the bulk of the goods were damaged by mildew, and that the defect was latent, and could not be discovered until the goods were printed. The defendants also offered evidence of a

usage of merchants, by which, in such cases, the seller is to make good to the purchaser the damage occasioned by the defect. The judge, for the purpose of submitting to the jury the matters hereinafter mentioned, admitted the evidence.

By agreement of the parties, after the introduction of the above evidence, special questions were submitted to the jury, who returned answers as follows:

"1. When goods of this kind are sold by sample, and both the goods and the sample have a latent defect, which cannot be discovered by the use of ordinary care on the part of the purchaser, which defect when discovered makes the goods unmerchantable except as damaged goods, is there a custom or usage by which the seller is to make good to the purchaser the damage occasioned by such defect?" Ans. "Yes."

"2. If there is such usage, was there such a defect in these goods?" Ans. "Yes."

"3. If there was such a defect, to what amount did it diminish the value of the goods?" Ans. "$1456.23."

"4. Were the goods equal in quality to the sample?" Ans. "No."

"5. If not, to what amount did the defect diminish the value of the goods?" Ans. "$517.18."

A formal verdict was thereupon taken for the plaintiff, for the balance of the price at which the goods were bargained for, deducting the sum of $517.18, and adding interest from the date of the bill; and the case was reserved for the determination of the whole court.

*F. H. Dewey,* for the defendants, cited *Lee* v. *Kilburn,* 3 Gray, 594; *Casco Manuf. Co.* v. *Dixon,* 3 Cush. 410; *Mixer* v. *Coburn,* 11 Met. 559; *Clark* v. *Baker,* Ib. 186; *Dwight* v. *Whitney,* 15 Pick. 179; *Thompson* v. *Hamilton,* 12 Pick. 425; *Lowry* v. *Russell,* 8 Pick. 360; *Loring* v. *Gurney,* 5 Pick. 15.

*T. L. Nelson,* (*W. W. Rice* with him,) for the plaintiff, cited, besides some of the cases cited in the opinion, *Higgins* v. *Livermore,* 14 Mass. 106; *Hastings* v. *Lovering,* 2 Pick. 219; *Strong* v. *Bliss,* 6 Met. 393; *Upham* v. *Lefavour,* 11 Met. 185; *Metcalf* v. *Weld,* 14 Gray, 210; *Donnell* v. *Columbus Ins. Co.* 2 Sumner, 377;

*Thompson* v. *Perkins,* 3 Mason, 232; *Beirne* v. *Dord,* 1 Selden, 95; *Ormrod* v. *Huth,* 14 M. & W. 664; *Carter* v. *Crick,* 4 Hurlst. & Norm. 412; 1 Smith's Lead. Cas. 252, 686.

CHAPMAN, J.  The court are of opinion that, by a fair construction of the written correspondence between the parties, the defendants were not purchasers of the goods in question, but were authorized by the plaintiff to sell them as his agents to Diggles & Co.  But as they were not authorized to sell on credit, they would, upon the sale, become responsible to the plaintiff for the price.

The sale was by sample.  On such a sale it is admitted that the law implies a warranty that the bulk of the goods shall be equal in quality to the sample.  See *Bradford* v. *Manly,* 13 Mass. 139.  The jury have found that these goods were not equal to the sample, and have assessed the damages at $517.18. This sum is therefore to be deducted from the agreed price.

The jury have also found that there is a usage that, when goods of this kind are sold by sample, and both the goods and the sample have a latent defect which cannot be discovered by the use of ordinary care on the part of the purchaser, which defect when discovered makes the goods unmerchantable except as damaged goods, the seller is to make good to the purchaser the damage occasioned by such defect.  They have also found that these goods, together with the sample, had such a defect, the evidence tending to show that it was occasioned by mildew, and they have assessed the damages occasioned by it.  The plaintiff denies that such usage is valid, and the question of its validity is presented to the court.

The plaintiff is not a manufacturer, and therefore no implied warranty of a manufacturer exists in the case.  The sale was between merchants, who are bound by the legal usages of merchants.

The law applicable to such a sale, in the absence of any usage, is well stated in Story on Sales, 376, as follows: " But if there be a defect in the bulk, and in the sample itself as a part thereof, and this defect is unknown and cannot be discovered by examination, there is no implied warranty against this

defect, and the seller is not responsible." See also *Parkinson* v. *Lee*, 2 East, 313, and *Sands* v. *Taylor*, 5 Johns. 395. The objection urged against the usage is, that it is contrary to this rule of law, and engrafts into the contract a warranty which the parties did not expressly make, and which is not implied by law.

The validity of usages of this character has been much discussed in Pennsylvania. In *Snowdon* v. *Warder*, 3 Rawle, 101, proof was admitted of a usage in Philadelphia and other places that, on a sale of cotton in bales, the vendor should answer to the vendee for any latent defect in the article sold, though there were neither warranty nor fraud on the part of the vendor. Gibson, C. J. dissented, on the ground that such a usage was contrary to the rule of the common law, and predicted that great inconveniences would arise from holding usages of such a character to be valid. In *Coxe* v. *Heisley*, 19 Penn. State R. 243, the question was reconsidered, and *Snowdon* v. *Warder* was overruled. Black, C. J. remarked that the courts of Pennsylvania had departed from the ancient rule, and had now come back to it; that the leaning of the courts both in England and America has of late years become still stronger than before against allowing the law to be controlled by local usages; that where the law implies a contract, it ought to be secure against such usages; that they must not conflict with the settled rules of law, nor go to defeat the essential terms of a contract. In *Wetherill* v. *Neilson*, 20 Penn. State R. 448, this doctrine was again affirmed. The court remarked that if parties intend to warrant it is easy for them to say so.

Such a usage is also held to be invalid in New York. In *Frith* v. *Barker*, 2 Johns. 334, Kent, C. J. says usage never is nor ought to be received to contradict a settled rule of commercial law, and cites *Edie* v. *East India Co.* 2 Burr. 1216. In *Thompson* v. *Ashton*, 14 Johns. 316, the question came up in a case much like the present. A quantity of crockery ware had been sold in crates, and on opening them the purchaser found that a part of the ware had been broken. He brought his action for damages, and offered to prove that it was the custom and usage of merchants dealing in this article that the purchaser purchased

and the seller sold on the invoices, without opening the crates or examining the ware, and that the exhibition of the invoices amounted to an undertaking on the part of the seller that the ware was good and merchantable. The evidence was rejected on the ground that its admission would render vague and uncertain all the rules of law on the sale of chattels. In *Wheeler* v. *Newbould*, 16 N. Y. 392, it was held that a usage among the brokers in the city of New York, by which the pledgee of promissory notes held as collateral security for a debt might sell them in market, was void, because it was in contradiction to the fair and legal import of the pledge. A similar doctrine was recently held in England. In *Suse* v. *Pompe*, 8 C. B. (N. S.) 538, proof was offered of a usage by which the holder of a foreign bill which had been protested for non-payment might recover either reëxchange or the price he had paid for the bill, at his option. The evidence was rejected. Byles, J., in giving the opinion, says that " evidence of a custom not to give notice of dishonor, or not to allow days of grace, would certainly be inadmissible." The gist of the objection is not that the custom is in contradiction to the express terms of the contract; but that it permits a general rule of law which is applicable to the contract to be superseded by a local rule adopted by particular classes of men, and thus leads to confusion, misunderstanding and wrong.

The same general doctrine has been repeatedly affirmed in this state. In *Homer* v. *Dorr*, 10 Mass. 29, this court say: " The usage of no class of citizens can be received in opposition to principles of law." But the usage proved in that case was held to be valid. It was a usage of insurers of a cargo on the outward and return voyages to return a portion of the premium if the vessel returned without a cargo. In *Eager* v. *Atlas Ins. Co.* 14 Pick. 141, the court say that no particular usage opposed to the principles of law can be sustained. The usage proved in that case was, that insurance offices in Boston, in adjusting partial losses, deducted one third new for old from the gross amount of the expenses of repair, which was contrary to the rule of law and to the construction which the law

gives to the contract of insurance, and it was held void. In *Richardson* v. *Copeland*, 6 Gray, 536, a usage of. trade between manufacturers and vendees of engines and boilers to consider them as personal property after they have been set as fixtures in a building was held to be void, the court saying that no usage " can be received to control the operation of law." In *Perkins* v. *Franklin Bank*, 21 Pick. 483, a usage in Boston that post notes should be regarded as payable without grace was held void, because it was contrary to. the provision of the statute by which they were entitled to grace.

Another principle by which usages are limited is, that they are void if they contradict the terms of a contract, or the legal interpretation or effect of a contract. This principle has been recognized in many cases in this state. Among them is *Lewis* v. *Thatcher*, 15 Mass. 431, in which a usage by which a warranty in a policy of insurance that a vessel was neutral was under-stood to mean that she merely pretended to be so but was not so in fact was held void, because it was contradictory to the import of the contract.

The case of *Bryant* v. *Commonwealth Ins. Co.* 6 Pick. 131, in which a usage allowing the master of a stranded vessel to sell the cargo without necessity was held void, rests on the principle that it is contrary to his implied authority, and also on the principle ·that it is contrary to the rule of law. The cases of *Randall* v. *Rotch*, 12 Pick. 107 ; *Macomber* v. *Parker*, 13 Pick. 175 ; *Atkins* v. *Howe*, 18 Pick. 16 ; *Eaton* v. *Smith*, 20 Pick. 150 ; *Taunton Copper Co.* v. *Merchants' Ins. Co.* 22 Pick. 115 ; *Mechanics' Bank* v. *Merchants' Bank*, 6 Met. 13 ; *Bowen* v. *Stoddard*, 10 Met. 375 ; *Macomber* v. *Howard Ins. Co.* 7 Gray, 257 ; *Miller* v. *Pendleton*, 8 Gray, 547 ; *Parsons* v. *Martin*, 11 Gray, 112 ; *Farnsworth* v. *Hemmer*, 1 Allen, 494 ; *Ware* v. *Hayward Rubber Co.* 3 Allen, 84 ; and *Codman* v. *Evans*, 5 Allen, 308, furnish instances of the application of one or both of these principles in various ways. So a usage by which a manufacturer is held not to warrant against latent defects, where the law implies such a warranty, is held void. *Whitmore* v. *South Boston Iron Co.* 2 Allen, 52. But some of our cases appear at first sight to

be inconsistent with these principles. The most prominent of them is *Clark* v. *Baker*, 11 Met. 186. The case arose out of the sale of a cargo of corn in the ship, the quality of which was warranted. The purchaser had paid a part of the purchase money; and then proceeded to take a portion of the corn. A part of it did not answer the warranty, and he refused to take any more, but did not return that which he had taken and which was good. He brought his action to recover back the balance of the money which he had paid, over and above the price of the corn he had taken. It had already been decided that he could not recover it by the rules of law, because he had not returned the whole of the corn, and so had not rescinded the contract. 5 Met. 452. But he proved on a new trial that there was a usage by which the purchaser in such cases kept the property so far as it answered the warranty, and returned only the residue. This usage was held to be good. And, the court say that " local usages have been held admissible by the judicial . tribunals, as competent to explain and qualify the contract, and give to it an effect materially different from that which the general law would have done in the absence of all evidence of such usage." And though they regarded the usage as being in contravention of the rules of the common law in relation to rescinding a contract of sale accompanied by a warranty or false representation, yet they sustained it as reasonable.

But the difficulty which is apparently created by this case and others like it is greatly diminished and perhaps wholly removed, when we look into the nature of usages. A usage, which is also called a custom, though the latter word has also another signification, is a long and uniform practice, applied to habits, modes and courses of dealing. It relates to modes of action, and does not comprehend the mere adoption of certain peculiar.doctrines or rules of law. This will be made apparent by an examination of the cases on the subject. For example, the usage referred to in *Snowdon* v. *Warder, ubi supra*, was merely to adopt as a rule of law that which was contrary to law. The same remark applies to all the Pennsylvania cases,

and also to the New York cases, except perhaps that of *Wheeler* v. *Newbould.* It also applies to our own cases.

But if no peculiar habits, modes or courses of business were allowed to affect the legal rights of parties, it is difficult to see how there could be any valid usages. In all the cases where usages are sustained, they do in fact operate to give effect to contracts different from that which the common law would have done, and they operate in contravention of the rules of the common law. For example, the usage by which a factor sells goods on credit, as stated in *Goodenow* v. *Tyler*, 7 Mass. 36, and *Dwight* v. *Whitney*, 15 Pick. 179, not only varies the contract between the parties, but their legal rights under it; the variation being, however, the result of the mode of dealing.

The same remark applies to the usage of the banks in Boston to regard commencement day as a holiday; *City Bank* v. *Cutter*, 3 Pick. 414; to the usage of mateship among whalers; *Baxter* v. *Rodman*, 3 Pick. 435; to the usage of ships on a voyage to touch at intermediate ports; *Lowry* v. *Russell*, 8 Pick. 360; to the usage by which a master is allowed to charter his vessel; *Thompson* v. *Hamilton*, 12 Pick. 425; to the usage as to what a purchaser of goods at auction shall do to claim damage; *Atkins* v. *Howe*, 18 Pick. 16; to the usage as to the time and manner of making demand and giving notice on a note; *Mechanics' Bank* v. *Merchants' Bank*, 6 Met. 13; to the usage as to a policy on outfits; *Macy* v. *Whaling Ins. Co.* 9 Met. 354; to the usage as to the method of forwarding goods; *Putnam* v. *Tillotson*, 13 Met. 517; to the usage as to what a buyer of cotton in bales must do to establish a claim for damages for fraudulent packing; *Casco Manuf. Co.* v. *Dixon*, 3 Cush. 407; and to the usage as to the manner and time of keeping a watchman in a factory; *Crocker* v. *People's Ins. Co.* 8 Cush. 79. It cannot be necessary to add to these examples. These usages are held to be good, notwithstanding their effect in changing the legal construction of contracts, or the rights of parties under them. The case of *Clark* v. *Baker* is like them in these respects; and the usages in all these cases are alike, in having reference to the methods of transacting business, and not to the mere adoption

of a peculiar or local rule of law, contrary to the terms of the contract or to a general rule of law applicable to its construction. The distinction here stated is somewhat nice, and it will not reconcile all the cases. In many instances, a usage has been sustained or rejected on the ground that it was or was not regarded by the court as reasonable; and the question whether it was contradictory to a principle of law, or to the terms or legal operation of a contract, was not adverted to.

In the present case, the usage proved does not relate to any particular course of dealing, but is the adoption of a mere doctrine as to the rights and obligations of the parties under a contract of sale, which doctrine is contrary to the rule of the common law on the subject. It holds that a warranty is implied, when by law it is not implied. It is therefore the converse of the case of *Whitmore* v. *South Boston Iron Co. ubi supra*, where the law implied a warranty by the manufacturer, and by the usage he was held not to warrant.

There is no necessity for such usages; because if the parties agree that there shall be a warranty where the law implies none, they can insert the warranty in the bill of sale; or if the manufacturer sells without warranty, he can so express it. But if such usages were to prevail they would be productive of misunderstanding, litigation and frequent injustice, and would be deeply injurious to the interests of trade and commerce. They would make it necessary to prove the law of the case by witnesses on the stand, and it would be settled by the jury in each particular case. Public policy, therefore, requires that when parties assume obligations which the law does not impose, or release obligations which it does impose, it should be done by express contract. For this reason, the remark of Mr. Justice Story, in 2 Sumner, 569, that of late years the courts of law both in England and America have been disposed to narrow the limits of the operation of such usages, and not to extend them, has been quoted with approbation both in England and in the courts of our sister states. The purchasers in this case might have required that the bill of sale should express a warranty against latent defects, if such warranty was to be made. They

*should* *not* *have* relied on a usage of such a character as has been held bad by a long series of judicial decisions.