Brown, J.
 

 The contract between the parties was for the loan of $2000, for the space of forty-four days, by the defendant to the plaintiffs, upon the deposit of certain promissory notes, as collateral security for its repayment. The money was accordingly advanced on the 6th of November, 1848, for which the defendant received Wheeler, Wood & Co.’s check upon the American Exchange Bank, in the city of New-York, for the sum of $2000, and, as collateral security for the repayment of the money, the plaintiffs deposited with them the notes, taken in the usual course of their business as merchants, amounting to the sum of $2614.73. They were fourteen in number, and were, by the terms expressed therein, due and payable in the months of March,
 
 *388
 
 April and June, ensuing the date of the loan. On the twentieth of December, the day when the loan matured, the check of Wheeler, Wood & Co. was presented at the American Exchange Bank for payment, and payment refused. On the day following, the defendant demanded from the plaintiffs payment of the money loaned, and interest, and gave them notice that unless the loan and interest was paid, he would proceed to sell the cob at era! securities for the best price he could obtain therefor. He accordingly sold them on the twenty-eighth of December, at private sale, to one Frederic L. Tates, for the sum of $2020 which was the best price offered for them. It appeared the notes were all paid at maturity.
 

 The contract was a pledge of the notes and not a mortgage. It was entirely silent as to the power of the pledgee over the subject of the pledge. It imposed no conditions and prescribed no terms in regard to the disposition of the notes, in the event of the loan not being paid at maturity. His power and authority to deal with them is to be determined by the law. The notes were deposited in his hands as collateral security, and we are to say what that term imported, what rights it conferred and what duties it imposed upon the pledgee. The primary and indeed the only purpose of the pledge is to put it in the power of the pledgee to reimburse himself for the money advanced when it becomes due and remains unpaid. The contract carries with it an implication that the security shall be made effectual to discharge the obligation: “It simply clothed the creditor with authority to sell the pledge and reimburse himself for his debt, interest and expenses, and the residue of the proceeds of the sale then belonged to the debtor. It has been supposed by some writers that, to justify such a sale, it was indispensible that it should be made under a decretal order of some court, upon the application of the creditor. But although the creditor was at liberty to make such an application, it does not appear that he might not act, in ordinary cases, without any such
 
 *389
 
 judicial sanction, after giving proper notice of the intended sale, as prescribed by law, to the debtor.”
 
 (Story’s Eq. Jur.,
 
 1008,
 
 2 Kent’s Com.,
 
 582.) . The sale to which the creditor is to resort is the means by which the property pledged is to be converted into money, because money alone will pay the debt. 'It is not a fixed, inflexible condition, annexed to every pledge, that the creditor may resort to a sale in all cases where there is a pledge, because the manner in which he is to - reimburse himself may depend upon the terms of the contract or be inferred from the character and condition of the property pledged. When the subject of the pledge consists of goods and merchandise, or chattels of any kind, there is no othei way in which they can be applied to the payment of the debt, unless they are first converted into money, which can only be done by a sale. The creditor must resort to this process because there is no other. Groods and merchandize, and personal chattels generally, are constantly bought and sold in the market, and the means to test their proximate value is always at hand. Their value at the place where they are offered is their value everywhere else; because it depends upon their intrinsic worth, and not upon extraneous circumstances. When the creditor, therefore, offers this kind of property for sale, to satisfy his debt, he does the debtor no injustice, if the sale is public, properly conducted, and upon due notice. But where choses in action, for the payment of money, notes, bills, bonds and mortgages, are the subject of the pledge, the case is widely different. This species of property has no intrinsic value, of which one person may judge as well as another. They are the written evidences of debts due, or to become due, from others, and their value depends exclusively upOn the solvency and ability of the debtor to pay them at maturity. They are not merchandise, in the usual sense of the word; and although they are sometimes the subject of sale, the practice is of recent origin, and evidence of the abuses rather than the legitimate uses of credit. A creditor holding such property in trust, for the use of his debtor, and offering
 
 *390
 
 it for sale in satisfaction of his debt, can hardly fail to sacrifice it; for unless the solvency and circumstances of the makers of the note are well known, and placed beyond doubt, few will purchase, and those only for the purpose of speculation, and at ruinously low prices. Unless the stipulations of the contract are expressly to that effect, the law will not require the debtor to submit his property to" an ordeal which must be, in a great measure, destructive of its value. It will rather presume that it was the intention of the parties to the contract that the creditor should, if he resorted to the pledge in place of the personal liability of the debtor, accept the money upon the hypothecated securities, as it became due and payable, and apply it to the satisfaction of his debt. This is the fair import of the contract; for it is not reasonable to infer an intention to subject to the hazards of a sale a species of property which is not usually the subject of a sale, more especially when that property furnishes, itself, a means of reimbursing the creditor, without loss, or the hazard of loss, to the debtor./ The acceptance of the pledge does not suspend the creditor’s remedy against the debtor a moment after the debt falls due. But if he resorts to the hypothecated securities, consisting of the written obligations of others for the payment of money, he must accept the money upon them as they become due, in place of selling and perhaps sacrificing them at a sale. This is just and right, both to debtor and creditor, and the law seeks to accomplish nothing less. In respect to the subject of the pledge, the right of property does not pass to the pledgee, but remains m ith the pledgor, subject to the lien of the former. (2
 
 Kent’s Com,.,
 
 581.) His character is that of trustee for the pledgor, first, to pay the debt, and second, to pay over the surplus, and he cannot so deal with the trust property, so as to destroy or even impan its value. In the present case, the notes deposited as security exceeded in amount the defendant’s debt some $600, and were all payable within six months of the time his money became due. He saw all this at the time he made the con*
 
 *391
 
 bract, and it is scarcely possible to believe that either he or the plaintiffs intended the notes should be sold in satisfaction of the debt within so short a period of then' maturity. To legalize such a transaction would be to sanction and encourage injustice and oppression; for just in proportion as the pledged securities exceeded in value the amount of the principal debt, so would be the inducement to bring them to the depreciating process of a sale. I am, for these reasons, of opinion that the court below properly decided that the defendant had no right to sell the notes either at private or public sale, or at auction, but was bound to hold and collect the same as they became due, and apply the money to the payment of the loan, and return the balance, if any, to the plaintiffs.
 

 This view is decisive of the whole case, but there is another point presented by the bill of exceptions, which I propose briefly to consider. If we assume that the defendant had authority to sell the subject of the pledge in satisfaction of his debt, it was nevertheless his duty to give to the plaintiff personal notice of the time and place of the sale. According to the text in 2
 
 Story’s Eq.
 
 Jur1008, the pledgee may sell “without any such judicial sanction, after giving the proper notice of the intended sale, as prescribed by law.” According to Chancellor Kent (2
 
 Kent’s Com.,
 
 582, 583), “the creditor may sell without judicial process, upon giving reasonable notice to the debtor to redeem, but the creditor will be held at his peril to deal fairly and justly with the pledge, both as to the time of the notice and the manner of the sale.” In
 
 Willoughby
 
 v.
 
 Comstock (3 Hill,
 
 389), the property pledged was four hundred shares of the Mechanics’ Banking Association. Default was made in the payment of the debt, and the creditor sold at the board of brokers, after having given the debtor two days’ notice of the time and place of the sale. The court was of opinion “that the defendant was duly advised of the time and mode of the sale, and made no objection to either. If he was then dissatisfied with a sale
 
 *392
 
 at the board of brokers, he should then have spoken. His silence indicated an acquiescence, and must have been so understood by all the parties concerned.” The case of
 
 Dyckers
 
 v.
 
 Allen
 
 (7
 
 Hill,
 
 497), was a pledge of stock to secure the payment of a note for the sum of $21,000. The pledgee sold the stock, before the note fell due, at private sale. In regard to the mode of sale, the chancellor, in his opinion, says : “ The authority to sell the stock in question at the board of brokers for the payment of the debt, if such debt was not paid when it became due, did not authorize the pledgees, even if they had retained the stock in their own hands, to put up the same secretly. But the should have put up the stock openly, and offered it for sal - to the highest bidder at the board of brokers, stating that it was the stock which had been pledged for the security of this debt, and with authority to sell it at the board of brokers if the debt was not paid. . In this way only would the stock be likely to bring its fair market value at the time it was offered for sale ; and in this way alone could it be known that it was honestly and fairly sold, and that ii was not purchased in for the benefit of the pledgees, by some secret understanding between them and the purchaser.”
 
 Stearns
 
 v.
 
 Marsh
 
 (4
 
 Denio,
 
 227) was the case of a pledge of boots and shoes, to secure the payment of a debt. The creditor sold, without notice to redeem, or of the sale, being given to the defendants. The court determined that both were indispensable to authorize the sale of the property, and, in the opinion, say: “Personal notice to the pledgor to redeem, and of the intended sale, must be given, as well in the one case as in the other (whether the debt be payable presently or on time), in order to authorize a sale by the act of the party; and if the pledgor cannot be found, and notice cannot be given him, judicial proceedings to authorize the sale must be resorted to. Before giving notice the pledgee has no right to sell the pledge, and if he do, the pledgor may recover the value of it from him without ten
 
 *393
 
 dering the -debt.” In the present case, we learn from the bill of exceptions that, on the day after the loan fell due, the defendant demanded payment of the loan and interest, and gave the notice that unless the loan was paid he would sell the collateral securities for the: best price he could obtain therefor. In resorting to this right of redress, by his own act, the law required of him that he should “ deal fairly and justly with the pledge, both as to the time of 1 the notice and the manner of the sale.” The object to be attained by giving the notice is to afford the debtor an opportunity to redeem, and to be present at the sale to see and know that it is fairly conducted and the property disposed of to the best advantage. Unless the notice given be such as shall accomplish this purpose, it is an illusion and of no possible utility; because, if the creditor does no more than give the notice of his intention to sell, without saying when or where, or in what manner, he deprives the debtor of a substantial right which the notice is designed to secure. The defendant, in this case, purposely withheld from the plaintiffs all knowledge of the time, the place and the manner of the sale, and thus evaded' the just requirements of the law. . He secured to himself the power of selling, privately and secretly, in the absence of the restraints and safeguards with which the law protects such transactions. The sale, when effected, was made to one Frederic L. Yates, privately, for about three-fourths of the actual and nominal value of the securities. A disposition of the pledge in this manner, and under such a notice, was oppressive and unjust, and destructive of the rights of the pledgor, which the court below very properly decided was wrongful and illegal, and entitled the plaintiffs to- recover.
 

 The counsel for the defendant offered to prove, upon the trial, the existence of a usage and custom in the city of New-York to sell notes and drafts similarly pledged,, after demand of payment and notice that such sale would be made in default of such payment, at private sale, for the
 
 *394
 
 best price that could be obtained, and not at public sale, or by auction. This evidence was objected to and rejected by the court. If I am right in the construction which I have put upon the contract, and in my estimate of the duties and obligations which the law imposed upon the pledgee in regard to the disposition of the subject of the pledge, this evidence was inadmissible. The usage to which it refers is in contradiction to the fair and legal import of the contract.
 
 (Furniss
 
 v.
 
 Hone,
 
 8
 
 Wend.,
 
 247;
 
 Dyckers
 
 v.
 
 Allen, supra;
 
 Merchants’
 
 Bank
 
 v.
 
 Woodruff,
 
 6
 
 Hill,
 
 174.)
 

 The judgment of the Supreme Court should be affirmed.
 

 All the judges concurring,
 

 Judgment affirmed.