## JOEL W. FLETCHER *vs.* WILLIAM DICKINSON.

A creditor who holds a note secured by mortgage as collateral security for his debt has no right to sell such security for less than its value, knowing that the purchaser buys it with intent to cancel it.

CONTRACT for breach of the following agreement, signed by the defendant : " Worcester, Dec. 21, 1857. Received of J. W. Fletcher, as collateral security to his notes of even date, (to wit, to one note of $1000, payable on demand with interest semi-annually, and one other note of $1000, of even date, payable on demand with interest semi-annually, and one other note of $700, payable in six months from date, with interest, and also to one note of $500, payable in four months from date, with interest,) a mortgage of $1000 given by Gardner Morse to C. W. Wilder, dated Oct. 19th, A. D. 1854, and assigned by said Wilder to said Dickinson ; also a note and mortgage given by said Morse to said Fletcher of $3000, dated Dec. 29th, A. D. 1856 ; when said notes are paid, said notes and mortgages are to be assigned to said Fletcher, or the proceeds received accounted for."

At the trial in this court, before *Chapman,* J., there was evidence to show that on the 1st of October 1861 the plaintiff had paid and taken up the two smaller notes given by him to the defendant, mentioned in the agreement, and had paid the interest on the two larger notes to June 21st 1860 ; that on that day Morse, having the right to redeem the mortgages which the defendant thus held as collateral, and being desirous to borrow money of Joseph Marshall and to give security therefor upon the mortgaged premises, offered to pay to the defendant the two $1000 notes, with interest, if he would assign the mortgages to Marshall ; his object being to discharge them. The defendant accepted the proposal, knowing the object. Inquiry being made if there would not be difficulty arising out of the transaction, inasmuch as only about $2000 was due on the notes, the defendant said that he would take the responsibility. The

mortgages, with the notes which they were given to secure, were accordingly assigned to Marshall, who on the 3d of January 1863 discharged the same upon the record. At the time of the assignment the plaintiff was absent from the Commonwealth. The day before the plaintiff went away, the defendant asked him to settle these notes before he left; to which the plaintiff replied that he could not, but had left his affairs with his wife. The defendant never made a demand upon her. The notes assigned to Marshall were of no value after the discharge of the mortgages, the maker having been discharged in insolvency. It was agreed that the value of the securities, if the mortgages had not been discharged, would have been $2000, over and above the amount due on the two $1000 notes of the plaintiff. On the 12th of March 1863 the plaintiff with his counsel called upon the defendant and offered in writing to pay the two $1000 notes, and requested the delivery and re-assignment of the notes and mortgages which had been assigned to the latter as collateral security. The plaintiff did not tender or exhibit any money, but his counsel was prepared to pay the notes, and so informed the defendant.

There being no dispute as to the above facts, the case was by agreement of the parties reserved for the determination of the full court.

*F. H. Dewey,* for the plaintiff, cited, in addition to cases cited in the opinion, *Garlick* v. *James,* 12 Johns. 149; *Dykers* v. *Allen,* 7 Hill, (N. Y.) 499; *Wilson* v. *Little,* 2 Comst. 449; *Stearns* v. *Marsh,* 4 Denio, 231.

*G. F. Hoar & E. B. Stoddard,* for the defendant, cited 2 Greenl. Ev. §§ 603, 605; *Breed* v. *Hurd,* 6 Pick. 356; *Thayer* v. *Putnam,* 12 Met. 297; *Wilson* v. *Little,* 2 Comst. 443.

Chapman, J. It appears that on the 21st of December 1857 the plaintiff, having two notes against Gardner Morse, which were secured by mortgages of real estate, transferred the same to the defendant. The defendant gave him a receipt therefor, specifying that they were received as collateral security to certain notes which the defendant then held against the plaintiff, and agreeing that when the plaintiff's notes were paid " said

notes and mortgages are to be assigned to said Fletcher, or the proceeds received accounted for."

By a private agreement, of which the plaintiff had no notice, the defendant sold these securities to Marshall for a sum much less than the amount due upon them. The object of Marshall was to discharge the mortgages for the purpose of relieving the estate from the incumbrance, and the defendant knew this when he made the sale.

The question arising in the case is, whether one who thus holds securities by pledge or mortgage, without any special agreement as to the way in which he may dispose of them, has a right to dispose of them in this manner.

The holder of stocks and bonds of a corporation as collateral may sell them, because that is the usual method of turning such securities into money; but it is held that the sale must be at public auction, after demand of payment and due notice of the sale. *Cortelyou* v. *Lansing*, 2 Caines' Cas. 203. *Brown* v. *Ward*, 3 Duer R. 660. See also *Washburn* v. *Pond*, 2 Allen, 474. But in *Wheeler* v. *Newbould*, 16 N. Y. 392, it was held that the pledge of commercial paper as security for a loan of money does not, in the absence of a special power for that purpose, authorize the pledgee, upon the non-payment of the debt, and upon notice to the pledger, to sell the securities pledged, either at public auction or private sale; but he is bound to hold and collect the same as they fall due, and apply the money to the payment of the loan. A usage among the brokers in New York city to dispose of notes held as collateral by making sale of them was held to be void, because it was in opposition to a rule of law. The ground of the decision is, that notes, not being usually marketable at their fair value, must generally be sold at a sacrifice, and so injustice would be likely to be done to the debtor, even if the sale were at public auction and with notice.

In the present case, the terms of the defendant's receipt bind him to reconvey the notes and mortgages when his debt is paid, or to account for the proceeds if collected; but there is nothing that imports a right to sell the notes. It is not necessary

to decide whether they might have been legally assigned, in case the assignment had reserved all the legal rights of the plaintiff. For the defendant made the sale and transfer to a party who purchased them for the purpose of discharging the mortgages. The knowledge of this purpose by the defendant made him a participator in the act of destruction, and a party to the injury that has been done to the plaintiff. The sale had also the objectionable features that it was private and without notice, so that even if the securities had been stocks it would have been illegal.

In *Cortelyou* v. *Lansing*, *ubi supra*, it was held that after the sale by the pledgee the pledger need not make a tender of the amount due, nor a demand of the securities, before bringing his action. In the present case, all was done by the plaintiff that could be useful. The defendant had sold the notes and the mortgages had been discharged when the plaintiff called upon him with his counsel. He had obtained a sufficient amount to pay the plaintiff's notes to him, and the plaintiff could only claim the balance due on the securities, and covered by the mortgages. A formal tender of the amount of the notes would have been a useless ceremony, such as the law never requires. The plaintiff is entitled to recover the sum of two thousand dollars, with interest from March 12, 1863, the time when the plaintiff's demand was made.