SHIPLEY, Respondent, v. LARRIMORE, Appellant.

No. 580; July 13, 1866.

**Appeal—Conflicting Evidence.**—A Judgment upon Findings of a jury upon conflicting evidence should not be disturbed.

**Broker.**—In an Action by a Broker Against a Customer who, after an alleged purchase of stock for him by such broker at his request, has repudiated the transaction, evidence that the plaintiff did not, when buying the stock, name the defendant to the vendor as the real purchaser, is immaterial.

**Broker.**—Buying Stock in His Own Name Without the Consent, knowledge or ratification of the particular customer for whom he buys is not a conversion of the stock by the broker, and it is not a waiver of the contract had with the customer to buy for him.

**Broker.**—In the Trial of an Action by a Broker for the price of stock purchased for the defendant at his request, the defendant cannot, under an answer that denies he ever made such a request, introduce evidence to show that the plaintiff waived the request to buy for him and had bought for himself, or had converted the stock.

**Broker—Conversion.**—The Sale by a Broker, Under the Rules or custom of the board of brokers, of stock in his hands for which the customer has not paid, the customer being given timely notice in contemplation of such sale, does not amount to a conversion.

SAWYER, J.—This is an action to recover the sum of two thousand eight hundred and seventy-five dollars, for moneys paid, laid out and expended by the plaintiff for and on account of defendant at his request. Also fifty dollars for the services of the plaintiff rendered at defendant's request in the

purchase of certain mining stocks. The cause of action is stated in the usual form of the common counts applicable to such demands, and the answer consists simply of denials of the allegations of the complaint. Plaintiff recovered and defendant appealed. The parties were examined on their own behalf, and the testimony of the plaintiff tended to show that defendant employed plaintiff, a stock broker, to purchase shares in a certain mining company; that plaintiff made inquiry as to what the stock could be bought for, and having ascertained the price reported it to the defendant; that defendant directed him to purchase ten shares at a price not exceeding a sum named, on thirty days' time, twenty per cent to be paid down; that he made the purchase at a few dollars less than the amount authorized, and a few minutes after reported the purchase to defendant, who was satisfied with it, and promised to bring the twenty per cent advance on Monday morning—the purchase having been made late Saturday evening; that on Monday morning defendant said that he was disappointed in getting the money to pay the advance; that plaintiff then informed him that the stock had advanced, and he could sell so as to make for him some four hundred dollars, and advised a sale; that defendant expressed an opinion that the stock would go to a much higher figure, and asked plaintiff to advance him the money to make the payment, and thus enable him to hold the stocks, promising to secure it by a conveyance of some real estate; that plaintiff thereupon made the advance for the benefit of defendant and at his request, and on the same day, after the interview with defendant, signed a written contract with the seller for the purchase, but in his own name, and the stock was deposited with Donahoe, Ralston & Co., bankers, subject to plaintiff's order on payment of balance; that on the following day plaintiff and defendant met again, when defendant declined to execute the conveyance agreed upon, saying there was litigation about the property intended to be conveyed; that he then knew the advance had been made, and said "he would fix it in a few days"; that plaintiff saw no more of defendant till the 8th of February, the day on which the balance of purchase money fell due, when he again appeared in response to a note addressed to him by the plaintiff in regard to the matter and repudiated the whole transaction; that plaintiff then offered

him the stocks, and demanded payment, which was refused by defendant, who denied that they were purchased by his authority; that plaintiff had the stocks in his possession at the time; that plaintiff told him that he should sell the stocks in the board of brokers and sue defendant for the difference; and informed defendant that it was customary to sell delinquent stock in the board; that he did sell, either on that or the following day, in the evening board, at a large loss. Plaintiff's testimony was corroborated in many material particulars by other testimony.

The defendant in his testimony admitted conversations about the purchase, but denied that he employed or authorized plaintiff to make the purchase; or that he requested him to make the advance; or that he promised to deed the real estate as security, and he wholly repudiated the purchases. On this conflicting evidence the jury found the facts for the plaintiff, and the verdict, so far as the facts are concerned, must control the decision.

On this state of the pleadings and evidence, the points made and discussed by the appellants do not appear to me to arise in the case.

The first point is, that "The contract (the written contract of purchase signed by the vendor and plaintiff) was not the contract of defendant, because under seal, and the defendant nowhere appears as a party to it, and the plaintiff nowhere appears as the agent of the defendant." But the question is not whether the vendor could maintain an action on that instrument against the defendant in this suit. This suit is on a contract alleged to have been made by the defendant with the plaintiff by which the plaintiff purchased certain stocks for the defendant and advanced the money to pay for them at defendant's request. The plaintiff alleges that he did make the purchase and advance at defendant's request, and the defendant denies it, and the jury find against the defendant on the issue. It does not matter that the plaintiff, in dealing with other parties, made the purchase in his own name. He purchased stocks for the defendant and had them to deliver. The defendant found no fault before suit brought because the plaintiff made the purchase in his own name. He put his refusal to take the stocks on other grounds. The plaintiff himself also advanced the money to pay for the stocks at de-

fendant's request, and, unless there was some agreement to the contrary, he was entitled to hold them until reimbursed: Horton v. Morgan, 19 N. Y. 172, 75 Am. Dec. 311. But defendant denied that he employed the plaintiff to purchase at all, or that he requested him to make the advances. This is the sole ground upon which he repudiates the transaction.

The second point is, that the act of the plaintiff in buying the stock in his own name, without the consent, knowledge or ratification of the defendants, is a conversion of the stock by the plaintiff, and a waiver of all claim for advances and commissions. And the third: That the premature sale of the stocks in the board by the plaintiff without the knowledge of the defendant, or notice to him, was a conversion.

As to the second point, we are not authorized by the record to say that the purchase in the name of the plaintiff was without the consent, knowledge or ratification of the defendant. But there is no question of conversion in the case. No such defense was set up in the answer. The defendant did not claim, and does not now claim, that he ever had any interest in the stocks. His whole defense is upon the theory that he did not employ plaintiff to make the purchase, or request him to advance the money, and did not have any right to the stocks. He repudiated the authority to purchase at all, or to advance money on his account. He did this before the sale of the stocks while they were still in the possession and under the control of plaintiff, and refused to take them or pay for them on that ground, and no other. He did not claim the stocks or any interest in them. He said he never employed the plaintiff to buy any stock, or requested him to advance money on his account, therefore he would not have anything to do with them, nor did he claim the stocks on the 9th, or at any time after, nor does he now claim them. His defense and testimony to support it all goes upon the theory that there never was any agreement between him and plaintiff of any kind whatever in relation to the subject matter. On this ground he planted himself, and on this ground he must stand or fall. There was no agreement that plaintiff should wait thirty days for his advance. The thirty days' time was given on the purchase of the stocks, and before the expiration of this time defendant declined to take them, and left the stocks on the plaintiff's hands. As defendant refused to take and

claimed no interest in them, plaintiff was not bound to hold them longer subject to his order. There was already a breach of contract on the part of defendant. The plaintiff could not be required to hold the stocks at his own risk on a rapidly falling market after the defendant had repudiated the purchase, and refused to take the stocks on the ground that he had never authorized the purchase. Had the defendant not repudiated the purchase, and the plaintiff had then sold the stocks, the question would have arisen whether they were improperly sold or not. For similar reasons the fourth point is untenable. The whole case as presented by the record is in substance this: The plaintiff at the request of defendant, and on defendant's account, purchased certain mining stocks in part on time, and advanced the necessary portion of the purchase money. The stocks before the day for paying the balance of purchase money fell in the market, and the defendant refused to take them and repudiated the authority of plaintiff to purchase. The plaintiff thereupon, after informing defendant that he should do so, sold the stocks in the stock board at a loss, and sued the defendant for the difference between the amount paid and that received for the stocks. And I think he was entitled to recover.

There is no point specified in the statement that the amount of the verdict is more than the evidence justifies.

Judgment affirmed.

We concur in the judgment: Sanderson, J.; Shafter, J.

CURREY, C. J.—I differ too widely from the opinion of my brother Sawyer in reference to the questions of law in this case to rest contented without expressing my own views in relation thereto; and in assigning the reasons on which my individual judgment is founded I deem it proper to state the material facts of the case, as I understand them to be disclosed by the record.

The plaintiff, a stock and exchange broker, sued the defendant for work, labor and services by the plaintiff rendered and performed for and on account and at the request of the defendant in and about the purchase of one Williams of ten shares of the stock of "Real del Monte Gold and Silver Mining Company." This work, labor and services it is alleged in the plaintiff's complaint was reasonably worth the sum of fifty

dollars, and the plaintiff also sued in the same action for the sum of two thousand eight hundred and seventy-five dollars for so much money by him paid, laid out and expended to and for the use and benefit of the defendant and at his request, which it is alleged the defendant, in consideration thereof, promised to pay him with interest thereon at five per cent per month, when he should be thereunto afterward requested. The defendant, by answer, traversed each and every material allegation of the plaintiff's complaint. Upon a trial before a jury a verdict was found for the plaintiff in the sum of two thousand eight hundred and seventy-five dollars, which the defendant sought without success to have set aside on a motion for a new trial. The substance of the plaintiff's testimony given upon the trial is that on the 9th of January, 1864, the defendant employed him to purchase of Williams ten shares of said stock at a sum not to exceed three hundred and ninety dollars per share, upon a credit of thirty days, except as to twenty per cent of the price. That thereupon the plaintiff made the purchase in his own name at three hundred and eighty dollars per share, upon a credit of thirty days for eighty per cent of the price, and soon thereafter, at defendant's request, advanced and paid to Williams the twenty per cent then due. Upon the purchase being made, the defendant expressed himself satisfied with it, and some three days thereafter promised to arrange for the advancement of the twenty per cent which the plaintiff had made. The parties did not meet again until the 8th of February following, when, in answer to a letter from the plaintiff requesting the defendant to take up the stock, the latter called upon the former at his place of business. The defendant so called at about half after 4 o'clock in the afternoon of the day with the letter which he had received from plaintiff and asked what it meant, in reply to which the plaintiff told him: "It meant what it said, that he should pay for the stock." The plaintiff testified that thereupon he informed the defendant that he had paid for the stock, and then offered it to him and demanded the money due him for it. Upon which the defendant said he did not owe the plaintiff anything, and repudiated the whole transaction in respect to the stock. Previous to this conversation on the same day the plaintiff had caused the stock to be sold at the evening board of brokers for ninety-two dol-

lars per share, and this conversation between the parties was very soon after such sale. It does not appear that the defendant was aware at the time that the stock had been sold, nor had he any reason to so believe, because, after the same had been sold, the plaintiff told the defendant he would have the stock sold subject to the rules of the board of brokers and then sue him.

In dealing with Williams the plaintiff did not disclose the name of his principal, but contracted in his own name. The contract between the plaintiff and Williams was in writing, dated on the 9th of January, 1864. It recites a purchase by the plaintiff of ten shares of the Real del Monte Company's stock at the sum of three thousand eight hundred dollars, of which seven hundred and sixty dollars had been paid. Then follows the plaintiff's promise to pay three thousand and forty dollars—the balance of the price—within thirty days from the date of the contract; and next follows the promise of Williams to deliver the stock to the plaintiff within the time specified upon payment of the last-mentioned sum.

The relation between the defendant and plaintiff was upon the plaintiff's showing that of principal and agent. The plaintiff was employed to purchase the stock for the defendant, and did so in his own name, according to the custom of brokers. He paid at the defendant's request the twenty per cent to be paid in advance, and on the 8th of February he paid the balance, as he was bound to do under his contract with Williams. When the stock was delivered to the plaintiff by Williams it became transferred to him: Story on Agency, secs. 155, 160a; Horton v. Morgan, 19 N. Y. 172, 75 Am. Dec. 311; which he thereupon held under an obligation to transfer it to the defendant upon payment of the amount due for the same, according to the contract between them. The defendant was under no obligation at any time to part with any greater sum than twenty per cent of the contract price without the transfer of the stock to him, and when the demand was made of him to pay for it, the plaintiff was bound to have the stock ready to be transferred upon receiving the money due for it and on its account. The defendant had all of the last of the thirty days in which to perform his engagement, and notwithstanding he disavowed having contracted with the plaintiff as alleged, and denied that he owed any-

thing, still in order to hold him to his contract and compel him to pay the price which had been advanced by the plaintiff, the latter was bound, in fulfillment of the contract on his part, to keep the stock or other of the same kind and of equal value on hand for the defendant: Horton v. Morgan, 19 N. Y. 172, 75 Am. Dec. 311. Or, in case he made sale of it, he could do so properly only after the demand of the price due and a tender of the stock, and after due notice to the defendant of the time and place of sale. Instead of holding the stock ready to be delivered to the defendant upon payment, the plaintiff caused it to be sold at the board of brokers without notice to the defendant of any intended sale, and this is attempted to be justified on the ground that such course was according to the custom of brokers. There is no allegation in the complaint of any custom of the board of brokers in such cases. The complaint is simply for work, labor and services rendered and performed by the plaintiff for the defendant at his request in and about the purchase of the stock of Williams, and for money paid, laid out and expended for the use and benefit of the defendant at his request, without even specifying for what. The plaintiff testified that at the interview between the parties on the 8th of February, he told the defendant that it was customary to sell delinquent stock in the board, and he then testified further that by the rules and customs of the board of brokers, a member who fails to meet a time contract is reported and the stock sold. He did not pretend that he was authorized to cause the stock to be sold at the board of brokers without notice to the defendant. On the contrary, he testified that the defendant did not give him any special order to have the stock sold. No custom of the board of brokers authorizing a sale of the stock in question at the board on the defendant's account was proved. The plaintiff testified that by the rules and customs of the board, a member is reported in case he fails to meet a time contract and the stock is then sold. The defendant was not a member of the board, and consequently the rules and customs mentioned had no application to him.

The plaintiff has cited and relies on the case of Whitehouse v. Moore, 13 Abb. Pr. (N. Y.) 142, as justifying the course which he pursued. In that case it was held by a single judge at special term that where the defendant employed the plaintiff as his broker and agent to purchase certain stocks, and

advanced to him a certain sum on account, and the plaintiff having made the purchase was compelled to pay the whole amount, he had the right, upon the defendant's omission to pay the balance due for the stocks, to sell the same in accordance with the custom of brokers in such cases, without notice to or demand upon the defendant or tender of the stocks to him, and that thereupon he was entitled to recover the difference between the purchase price and that at which the stocks were so sold. The question decided arose upon demurrer to the complaint which alleged that the course pursued was in accordance with the custom of brokers in such cases. The learned judge referred to the case of Merwin v. Hamilton, 6 Duer (N. Y.), 249, as a full and decisive authority in support of the demurrer unless the allegation of the custom of brokers prevented its application. Merwin v. Hamilton was decided by a full bench, of which the eminent Judge Duer was one. In the last-named case it was held, first, that a broker, who is employed to purchase stocks and is authorized by usage or express agreement to make the purchase in his own name without disclosing the name of his principal, has no right to maintain an action against his principal for not furnishing him with money to pay for the stocks without showing that he had demanded payment of the price and had transferred or offered to the principal the stocks purchased. Second, that the transaction is in law precisely the same and is governed by the same rules that would have applied had the contract been an immediate sale from the broker as seller and his principal as buyer. That the payment of the price and the transfer of the stocks are simultaneous acts and conditions mutually dependent. Third, that if the broker sells the stocks without demanding payment of the price, and without transferring them or offering to transfer them to his principal, and without notice of his intention to sell, he thereby disables himself from making the necessary transfer or tender and in effect converts the stocks to his own use, and loses any right of action against his principal which he might otherwise have had.

It is not necessary to say whether or not I approve the doctrine of Whitehouse v. Moore, as the question upon which that case was decided does not exist in this. The doctrine laid down in Merwin v. Hamilton is to my mind consonant with sound reason and just principles. In such cases the broker or

agent must demand the price due and offer a transfer of the property upon payment, and if he resorts to a sale of it, in case of a refusal of the principal to pay, he must do so after demand of the price and tender of the property, and after due notice of the time and place of sale. The evidence shows that at the time the action was commenced the plaintiff had sold the stock, without notice to the defendant of the time or place of sale. The defendant was as much interested in a fair and just sale of the property as would be the pledgor in the sale of a pledge by the pledgee. Where a pledgee undertakes to sell pledged property without resorting to a foreclosure in equity, the law requires that notice to the pledgor to redeem, and of the time and place of the sale, in case no redemption is made, shall be duly given: Stearns v. Marsh, 4 Denio (N. Y.), 230, 231; Wheeler v. Newbould, 16 N. Y. 392; Brown v. Ward, 3 Duer (N. Y.), 660; Lewis v. Graham, 4 Abb. Pr. (N. Y.) 106. I do not perceive any reason why the same rule should not apply to the case under consideration. The plaintiff undertakes to meet and remove the obstacle in his way by interposing the conduct of the defendant in repudiating the contract, as obviating the necessity of any notice of the sale; and he insists that the notice of sale was unnecessary on the ground that, if it had been given, it would have been disregarded by the defendant. The court cannot, nor has it the right to, say that it would. The law has prescribed the rule to be observed in such cases, which is reasonable and just, and which we have not the right to evade.

By causing the stock to be sold without notice to the defendant, the plaintiff lost the right of action which he otherwise might have had against the defendant.

In my judgment the order refusing a new trial should be reversed and the court below directed to grant the defendant's application therefor.

RHODES, J.—In my opinion the contract between the parties is to be governed by the rules that would be applicable had the plaintiff contracted to sell the stock to the defendant; and the stock having been sold before the expiration of the thirty days' credit given to the defendant, and without notice to him of the time and place of sale, he was not liable to the plaintiff for the contract price, and I think the judgment should therefore be reversed and a new trial ordered.