## FRAKER vs. REEVE and another.

36   85,
92   282

36       85
53 LRA 857n
53 LRA 858n

(1) *Mortgage of chose in action.* (2) *Right of mortgagee to sell.*

1. A. gave his note to B., and, as collateral security for its payment, transferred and set over to B., by a written instrument of the same date, two notes of one M. and a chattel mortgage securing them, with condition that if default were made in the payment of the A. note, B. should have authority to collect the M. notes, *or to negotiate them*, for the purpose of liquidating said note of A. *Held*, that the effect of said written instrument was to vest the title to the M. notes conditionally in B.; and this effect was not prevented by B.'s giving a written receipt for said notes stating that they were received as collateral security.

2. A. having made default in the payment of his note, B., upon due no-
tice to A., sold the M. notes at public auction. *Held*, that he was not
liable to A. as for a *conversion* of said notes.

APPEAL from the Circuit Court for *Winnebago* County.

Action for damages for the conversion of two notes. The
complaint stated, in substance, that on the 23d of May, 1873,
plaintiff, being indebted to defendants on two judgments in the
sum of $904.53, delivered to them his promissory note of that
date for that sum, payable in ninety days, with interest, in sat-
isfaction of said judgments, which was thereupon satisfied of
record; that plaintiff then delivered to defendants two other
notes executed by Vandercook & Ferguson for the sum of
$1,000 each, dated April 9, 1873, and payable in one and two
years respectively, with interest; that thereupon defendants,
by their attorneys, delivered a receipt for the same to plaintiff,
as follows: "Received, April 23, 1873, two certain notes [de-
scribing them] from *E. L. Fraker* as collateral security for the
payment of a certain other note bearing even date, executed
to *Reeve & Roe* by said *Fraker* for the sum of $904.53, with
interest at ten per cent., payable in ninety days. REEVE & ROE,
by JACKSON & HALSEY, their attorneys in fact;" that said note
for $904.53 is now due and unpaid, and no steps have been
taken to collect the same; that on September 17, 1873, defend-
ants served upon the plaintiff a written notice, demanding
that he redeem the two notes executed by Vandercook & Fer-
guson, on or before the 24th of September, 1873, and notifying
plaintiff, in substance, that unless he did so redeem said notes,
defendants, by virtue of the power vested in them as pledgees
of the same, would negotiate and sell said notes to the highest
bidder, for the purpose of liquidating and paying said note for
$904.53, and that such sale and negotiation would take place
at the law office of Jackson & Halsey on September 24, at
which time the plaintiff was notified to be present and to have
in attendance such bidders as he saw fit; that plaintiff and his
attorneys were present at such sale, and forbade the same, but

defendants sold said notes, the second for $650, and the first for $400, and delivered them to the purchaser, for which they received $1,050; that the actual value of said notes was their face and interest, being $2,100; and that defendants wrongfully sold said notes and converted them to their use.

The answer denied any wrongful conversion of the notes, and alleged that at the time of the delivery of the notes to defendants, plaintiff delivered to them the following contract in writing: "For value received, I hereby transfer and set over unto *Reeve & Roe* the two notes hereto attached, and the chattel mortgage securing the same, on file in the office of the city clerk of the city of Oshkosh, executed by Vandercook & Ferguson to *Eugene L. Fraker* (said mortgage being filed in the said office on the 9th day of April, 1873), as collateral security for the payment of a certain note bearing even date herewith, executed by me to *Reeve & Roe*, for $904.53, payable ninety days after date, with interest at ten per cent. per annum. And in case default be made in the payment of said note last named, I authorize the said *Reeve & Roe* to collect the said notes, or negotiate the same for the purpose of liquidating the last described note. E. L. FRAKER." The answer further alleged that defendants had sold no notes except the two described in said contract, which were sold to the highest bidder; that such sale was open and fair, and made after the note for $904.53 had become due, and after plaintiff had refused to pay the same; that the value of such notes at the time of the sale was $1,050 and no more, and the value of the plaintiff's interest therein was $107.54; and that immediately after such sale the defendants duly tendered the plaintiff said sum of $107.54, and the note for $904.53, which he refused to accept, and still does so.

A jury having been waived, the court found that all the allegations of the answer, and all those of the complaint not denied by the answer, were true; and it held that defendants were entitled to a judgment dismissing the complaint, and for costs. Judgment accordingly; from which plaintiff appealed.

*James Freeman*, for appellant:

1. The receipt given by *Reeve & Roe* to the appellant, and the transfer given by him to them, must be construed together. So construed, they show these notes to have been taken as collateral, and not as a pledge; and *Reeve & Roe* had no right to sell them at public auction to the highest bidder. They could only sell their interest in them, which was the sum of $904.53, and interest thereon. *Wheeler v. Newbould*, 16 N. Y., 392; *Atlantic Fire Ins. Co. v. Boies*, 6 Duer, 583; 8 Wend., 246; 6 Hill, 174; 12 Johns., 146. 2. When the action was brought, defendants had actually sold the notes and converted them to their use. The plaintiff's right of action accrued immediately, and no tender of the debt was necessary before suit. 4 Denio, 227; 2 Caines' Cas., 200; 7 Hill, 497; 2 Coms., 243.

*Jackson & Halsey*, for respondent:

1. The instrument executed by the plaintiff to defendants was a chattel mortgage with a power of sale. *Brown v. Bement*, 8 Johns., 96; *Atwater v. Mower*, 10 Vt., 75; *Barrow v. Paxton*, 5 Johns., 258; *Cortelyou v. Lansing*, 2 Caines' Cas., 200; 9 Wend., 80; 2 Hilliard on Mort., 356; Story's Eq. Jur., § 1030; *Tucker v. Wilson*, 1 P. Will., 261; *Lockwood v. Ewer*, 2 Atk., 303. Although the transfer was for collateral security, it conveyed the legal title to the defendants, and after the ninety days the two $1,000 notes became the absolute property of the defendants. *Atwater v. Mower*, 10 Vt., 75; *Nichols v. Webster*, 1 Chand., 203; *Byron v. May*, 2 id., 103; *Flanders v. Thomas*, 12 Wis., 410; Story's Eq. Jur., § 1030. The parties entitled to maintain trover, in case of a conversion of these notes, would be *Reeve & Roe*, and not the plaintiff. *Cotton v. Marsh*, 3 Wis., 221; *Bates v. Wilbur*, 10 id., 415. 2. Even if the transaction is to be regarded as creating a pledge and not a mortgage, the court has found that all the necessary steps were taken to constitute a valid sale of the notes as a pledge. *Ainsworth v. Bowen*, 9 Wis., 348; *Stearns v. Marsh*, 4 Denio, 227; Story's Eq. Jur., § 1008; Edwards on Bailments, 248, 249.

COLE J. By the terms of the instrument set out in the answer, the legal title of the two Vandercook & Ferguson notes was conditionally transferred to the defendants. The instrument is in the nature of a chattel mortgage, and the principles of law applicable to such contracts must determine the rights of the parties under it. We shall not attempt to determine and settle all those rights in this action. We will merely say that we are quite clear that trover for the conversion of the notes cannot be maintained upon the facts alleged in the pleadings and proven on the trial.

An examination of the instrument will show that it was rather in the nature of a mortgage than a pledge of the notes. The distinction between a pawn and mortgage of chattels is well settled. "By a grant or conveyance of goods in gage or mortgage, the whole legal title passes conditionally to the mortgagee; and if the goods are not redeemed at the time stipulated, the title becomes absolute at law, although equity will interfere to compel a redemption. But in a pledge, a special property only passes to the pledgee, the general property remaining in the pledgor." Story on Bailments, § 287; 4 Kent, 149 (11th ed.); *Flanders v. Thomas*, 12 Wis., 410, and cases there cited. Now, upon referring to the written contract, it will be seen the plaintiff thereby expressly transfers and sets over to the defendants the two Vandercook and Ferguson notes, together with the chattel mortgage securing the same, as collateral security for the payment of his note executed to them of even date with the instrument, upon condition that if default was made in the payment of the last named note, then the defendants were authorized to collect the former notes, or to negotiate them for the purpose of liquidating the last described note. Thus it indubitably appears that the legal title of the notes in controversy was transferred to the defendants, with the authority either to collect or negotiate them in case the plaintiff's note was not paid at maturity. And we fail to discover anything in the receipt set out in the complaint which

varies these terms of the contract, or which shows that the property in the notes did not, on default, pass to the defendants.

It is an admitted fact in the complaint, that the plaintiff's note was not paid.   It is also stated in the complaint, that due notice was given the plaintiff to redeem these notes, and that unless he did redeem them the defendants, by virtue of the power given them, would proceed to negotiate and sell them at public auction for the purpose of raising money to pay his note ; and that he was fully advised of the time and place of the sale. The complaint further shows that the plaintiff, by his attorneys, attended at the time and place mentioned, and forbade the sale, but that, notwithstanding this protest, the defendants sold the notes to Moses Hooper for the sum therein named.

In view of these matters we do not perceive upon what ground an action for the conversion of the notes can be sustained.   For, as above remarked, the transaction was in the nature of a mortgage, and the title in the notes was vested conditionally in the defendants.   The plaintiff made default in the payment of his debt, and had not paid it at the commencement of this action.   The counsel for the plaintiff insists that, as the notes were only transferred as collateral security, the defendants had no right to sell them in the manner they did and give an absolute title.   But under the authority expressed in the instrument, they could collect the notes when they became due, or might " *negotiate* " them for the purpose of satisfying their debt.   To that extent and for that purpose the legal title and general property in the notes had been doubtless vested in them. The plaintiff gave them clear and ample right and authority thus to deal with these securities.   It appears to us the case is clearly distinguishable from that of *Wheeler v. Newbould*, 16 N. Y., 392.   The court there held that the contract was a pledge of the notes, and not a mortgage, and that it was entirely silent as to the power of the pledgee over the subject of the pledge.   And as the contract imposed no condition and pre-

scribed no terms in regard to the disposition of the notes in the event the loan was not paid at maturity, the power and authority of the creditor to deal with them was to be determined by the general principles and analogies of the law. The case furnishes no ground to sustain this action for a wrongful conversion of these notes upon the facts established by the evidence and the admissions in the pleadings. Whatever may be the rights of the plaintiff under the contract, it seems to us clear he has mistaken his remedy. What that remedy is, if in fact any exists, or how it is to be enforced, we shall not attempt to point out, but content ourselves with deciding the case before us.

In *Wheeler v. Newbould*, the court very strongly intimates — if the point is not expressly decided — that a pledge of commercial paper as security for a loan does not, in the absence of a special power for that purpose, authorize the pledgee, upon the nonpayment of the debt, and upon notice to the pledgor, to sell the securities pledged, either at public or private sale; but that he is bound to hold the same, collecting them as they become due, and applying the proceeds to the payment of the loan. Without dwelling on that case, we think the rule there laid down does not apply to a transaction like the one before us, where the intention was that the property in the notes should become absolute at law in the creditor on default of the debtor to pay his debt.

This view is decisive of the case, and renders it unnecessary to notice the questions of practice brought to our attention by the brief of the counsel for the plaintiff.

*By the Court.* — The judgment of the circuit court is affirmed.