Per Curiam
It is not necessary to say in this case more than that the conclusions of law of the referee, followed the findings of fact, that he made, and that the testimony shows no error in those findings.
Judgment affirmed, with costs.
. The following is the opinion of the referee:
Hamilton Shell (referee).—The plaintiff brings this action to recover for work, labor, and services. He alleges that these services were rendered between April 1, 1883, and May 15, 1884, in procuring advertisements and renewals thereof, for the defendant, and at the defendant’s “special instance and request.” He demands judgment for $6,471.83, with interest.
The defendant denies the complaint and alleges payment. It sets up a special contract made with the plaintiff on November 8, 1883, by which the plaintiff was to do certain things for which he was to receive certain commissions, and alleges that such contract was violated by the plaintiff, whereby “ the defendant was deprived of the benefit which it would have derived from the plaintiff’s services, so that said services became and were of little or no value, and the defendant has paid the plaintiff more than the said services were worth. ”
To this the plaintiff replies that such a contract was indeed made, and that he fully performed it upon his part from the day of its date until January 15, 1884, and was then ready and willing to continue its performance, but that on that day defendant refused to further abide by and perform it upon his part, whereby, as he alleges, “ the said contract was rescinded and became extinct.”
The first question to be determined is, by whom was the contract broken ?
In January, 1882, an agreement was made between the plaintiff and Mr. Wm. O. Allison, which provided that “ for three years thereafter the plaintiff should devote his attention exclusively to the Oil, Paint and Drug Reporter,” and other publications issued by said Allison, and should receive specified commissions upon the new advertising which he might secure, and upon all renewals of advertising originally secured by him. In the following year the defendant, the Oil, Paint and Drug Publishing Company, was organized. Mr. Allison became its president. It assumed Allison’s contract with the plaintiff of January, 1882, and about November, 1883, entered into a new contract with him, which was to take effect November 8, 1883, and to continue in force until December 31, 1885. The plaintiff agreed as before, “to devote his time exclusively to the Oil, Paint and Drug Reporter,” and such other publications as th'e said company might issue. Upon new advertising secured by him he was to receive a commission of thirty per cent, upon all renewals of old advertising, a commission of twenty per cent, and upon all new subscriptions a commission of fifty per cent. It was provided that the publication of an advertise *33 ment by the company should constitute its acceptance of the plaintiff’s contract therefor. It was further provided that the plaintiff’s commissions should be paid to him “ wholly or in part as the contracts against which they accrue are paid to the said company.” The final clause of the agreement was as follows : “ This agreement is to replace from this date, any ana all agreements of similar nature now existing between said Riday and W. O. Allison, and between said Riday and the Weekly Drug News Association.”
On January 15, 1884, the president and treasurer of the defendant addressed to the plaintiff a brief but pungent letter in the following terms:
“ Dear Sir:—It having become evident to us that you have committed flagrant breaches of confidence and of contract as regards this company, we give you notice hereby that until you are prepared to execute satisfactory papers, which will give us sufficient damages in case of the slightest further breach of contract or act of treachery on your part, we shall decline to treat with you or to pay you any further money. We shall moreover regard your failure to promptly offer us the required guarranty as sufficient cause for proceeding against you on account of your past acts.
Yours, etc.”
The plaintiff’s answer was addressed to the “ Oil, Paint and Drug Publishing Co.” It did not deny that the things charged against him had “ become evident" to Allison and Root. It said: “Such threats I am not in the habit of receiving; I have done my work well * * * I desire an amicable settlement, and that pleasant relations may exist. * * * As you say you are through with my services, I wish a settlement, and expect on account to-day a check for $100. * * *
Yours truly,
RIDAY.
To which Allison and Root replied- “ Yours of to-day does not advance matters at all. You have simply to decide promptly whether you will definitely and positively give up all talk or action with outside parties, and give us satisfactory guarantees to that effect or not. No talk or writing on any other basis will be considered “ till that point is settled.”
Here the correspondence ended. Mr. Root, the defendant’s treasurer, requested the plaintiff to vacate the office occupied by him, and remove his desk, which the plaintiff did.
It is argued by the learned counsel for the defendant that the letter of January 15 did not constitute a dismissal of the plaintiff. Technically this may be true. It did not say in terms that he was discharged, or that his services were no longer wanted. It gave him the option to remain provided he would furnish the defendant with satisfactory security that he would thenceforward deal honestly and perform the agreement upon his part. It distinctly notified him that unless he did so the defendant would break off all relations with him, and withhold all moneys it then owed him, or that might become due to him thereafter. It was a plain avowal that the defendant would not further abide by the agreement of November 8 unless the plaintiff would submit to an onerous condition which that agreement did not provide for. The defendant’s position was that it had the right to terminate the agreement by a dismissal of the plaintiff because the plaintiff had been guilty of gross “breaches of confidence and of contract,” and that it had the right also to dictate the terms upon which it would overlook or condone the plaintiff’s misbehavior. It is necessary, therefore, to examine the evidence in order to determine whether or not the accusations made against the plaintiff were founded in facts.
Mr. Allison and Mr. Root have testified to an interview had by them with Riday on the 16th of January, the day following the writing of their first letter. Riday does not deny the conversation wliich they relate as having occurred on that occasion, but says that he has no recollection of it. Mr. Allison charged Riday with having solicited subscriptions for another paper, or, as Mr. Root states it, with having been in negotiation with outside parties to start a paper in opposition to that published by the defendant, and with having solicited subscriptions to that object This charge Riday strenuously denied. Allison then accused him of falsehood, and claimed that he spoke *34 from information received from parties whom Riday-had solicited, to which the latter responded: “ Mr. Borne (Allison’s alleged informant) tells yon everything.” Allison asked: Why did you deny it? and Riday said that he denied it because he was not soliciting four dollar subscriptions; or, according to Mr. Root, “he (Riday) sought to justify his statement that he had not solicited subscriptions by saying that he was not soliciting any annual subscriptions for the delivery of the paper.” It is insisted that this testimony shows an admission by the plaintiff that he had been engaged in attempts to found a rival paper in violation of his agreement to devote his time exclusively to the publications of the defendant.
This is not so plain to me, as it seems to be to the defendant’s counsel. Certainly there is no express admission,no admission in terms. It is matter of inference. There is not entire harmony between the testimony of Mr. Allison and that of Mr. Root, and I find nothing in the conversation, as related by either witness, which amounts to a retraction of the denial with which, according to both of them, the plaintiff met the charge, whatever it was, when it was made by Mr„ Allison. When a party is accused of a breach of contract, the fact of his guilt should not be rested upon a doubtful inference, when positive evidence is attainable. The parties with whom it was said Riday had negotiated were known to Mr. Allison. They were not produced as witnesses for the defendant. It is not suggested that they were remote or inaccessible, nor is any other reason assigned for their non-production. I may add that the defendant was distinctly advised that Riday denied that he was endeavoring, prior to January fifteenth, to start an opposition paper, for his deposition had been taken before trial, and he had then, on his cross-examination made the denial in plain terms.
It is further insisted that Riday left the defendant’s employment, not because he was dismissed, but voluntarily, and in pursuance of a previously formed intention. Three witnesses, Lockwood, Bell and Peters, testified that he informed them that he was going to leave, and Lockwocd says: “He stated to me that he was going to leave them, and would have some printing for me to-do, but he did not want me to say anything about it at the time.” Afterwards, and about the month of April, Riday took to Lockwood a circular in manuscript which he (Lockwood), printed at Riday’s request. In this circular, Riday announced “to the trade,” that in January he was “ induced by fail-promises to sever (his) connection with the Oil, Paint and Drug Reporter to take charge of what (he) believed would be an independent journal.” Giving to this testimony all the force and weight that can reasonably be claimed for it, it shows only, that on January fifteenth, when the defendant’s first letter was written, Riday was contemplating a severence of his relations with the defendant and a connection with an opposition paper. I find no evidence that he had done any act towards carrying such an intention into effect. Offers had been made to him in behalf of the Independent Record. They were pending and unaccepted, when the defendant’s demand for security as a condition of its further recognition of the agreement of November eighth, was made. It is impossible to say, that if that demand had not been made Riday would have accepted those offers and left the defendant’s service. He had said to outside parties that he "was going to leave, but he had given no notice of that sort to the defendant; he had made no new engagement, his day impenitence had not passed, and there is no proof or no suggestion that he was not, down to the day of the demand for security faithfully engaged in soliciting advertisements for the defendant. It seems to me too clear to admit of serious denial that the defendant’s letter of the fifteenth of January, absolved him from all further obligations and duty under his agreement. When one party to a contract refuses to perform it, he is not at liberty to assert in his defense that the. other party had arranged or was intending to do the same thing, and would have done it, if he had not been anticipated. In view of the facts disclosed by the evidence and above referred to, I give no importance to the plaintiff’s statement in his circular of April ninth, that in January, he had been induced by fair promises, to sever his connection with the OH, Paint and Drug Reporter. The reason for that statement and its explanation are .apparent.
In further answer to the defendant’s contention that the plaintiff’s leaving was voluntary and in violation of his agreement, the plaintiff asserts that that *35 agreement was without mutuality, and that therefore he was at liberty to withdraw from it at his pleasure, and also that his right to commissions earned would not be affected by a willful abandonment by him of his employment, which would only render- him liable to a claim for damages. Both of the»e propositions seem to be well founded, but the conclusion expressed above renders a discussion of quite unnecessary.
The remaining questions relates to the amount of damages to which the plaintiff is entitled. His action is properly brought upon quantum meruit, notwithstanding the special agreements by which the rate of his reward was fixed. Farron v. Sherwood, 17 N. Y., 227; Fells v. Vestvali, 2 Keyes, 152; Higgins v. Newton, etc., Railroad Company, 66 N. Y., 604.
He claims commissions upon three classes of contracts.
First. Those procured by him for Mr. Allison under the agreement of January 24,1882, the publication of which was assumed and continued by the defendant from and after April 1, 1883.
Second. Those procured by him for the defendant under the verbal agreement between April 1, 1883, and the 8th day of the following November.
Third. Those procured by him for the defendant .under the written agreement of November 8th.
As to the first class, the facts briefly stated are, that about April 1, 1883, the publication of the Oil, Paint and Drug Reporter, was transferred by Allison to the defendant, who assumed Allison’s agreement with the plaintiff and continued the publication of unexpired advertisements which, prior to that time, the plaintiff had secured and which Allison had accepted, and all moneys paid by advertisers for such continued publications after April 1st, were paid to the defendant. It is plain enough that the plaintiff rendered no services to the defendant in soliciting and securing these advertisements, and that they were not secured to him at the defendant’s instance or request. If the complaint is literally or strictly construed they do not come within the cause of action which it contains. But no such objection was taken on the trial. On the contrary, both parties have disputed over, and submitted to my judgment the general question of defendant's indebtedness to the plaintiff for commissions, whether upon contracts secured for Allison and assumed by the defendant, or upon contracts secured directly for the defendant after April 1st. The account kept by the defendant with the plaintiff covered all these contracts; the payments made by it were on account of commissions due Riday without discrimination; these payments have been proved by the defendant, and many of them preceded the receipt of any moneys by the defendant upon contracts of later-date than April 1st; statements of account were rendered by the defendant setting forth in detail the several Allison contracts which were continued and performed by the defendant, and the amounts of money received by the defendant therefor; these statements have been the subject of inquiry and explanation by both parties upon the trial, and the two questions contested .have been whether Riday violated his agreement, and, if not, what sum is due to him from the defendant for all commissions accruing- to him on all payments made to the defendant for advertisements published by it since it succeeded to the Oil, Paint and Drug Reporter, in April, 1883.
Many of the contracts in question are known as “if” contracts, that is, they direct the publication of the advertisements to which they relate, for a specific term, and until forbidden or discontinued by the advertisers. For examples: the contract of Ruischman Brothers is “ for one year and thereafter until forbid;” that of the Memphis Oil Company is “ for one year and thereafter until ordered to be stopped.” It seems to have been the defendant’s practice to treat advertisements published under such contracts as “new” advertisements for the “ one year ” and thereafter as “ renewals. ”
The commissions payable on renewals were materially less than those payable on new advertisements. The plaintiff contends that upon such a contract he is entitled to the higher rate of commissions for the entire term for which the advertisement is published. I think he is right. A renewal of an existing contract involves a new agreement between the contracting parties. If the contract is for an indefinite period, with a reserved option to either party to terminate it at his pleasure, it subsists until that option has been exercised. The contract with Clark & Warren was for five years; that with the Pennsylvania Oil Company was for five years, and ’till forbid; yet the defendant treats these *36 as contracts for new advertising for only a single year. It seems to me that no proposition can be plainer than this upon an “if ” contract. Riday is entitled to full commissions so long as the advertisment is published under it. I improperly allowed the plaintiff to answer the question put to him by his own counsel: “For what period were you entitled to commissions, as commissions, upon new business on a ’till forbid contract ? ” To offset that, I improperly allowed Allison to answer a like question. So far as their answers may be claimed to put a construction upon these contracts, I exclude them from consideration in the decision of this case. Allison testifies that the custom of the trade is to consider “if” contracts as ‘ ‘ renewal ” business after the expiration of the first year. But a custom cannot be invoked to modify or vary the terms of a written contract. Wheeler v. Newbould, 16 N. Y., 392; Markham v. Jaudon, 41 id., 235; Lawrence v. Gallagher, 10 J. & S., 321.
Another question is, as to commissions payable upon contracts, of which that of Wm. Taylor & Sons (new) is an example. Riday’s agreement with Allison went into effect on the 24th day of January, 1882. He secured a contract for advertising from Taylor & Sons amounting to $100. Afterwards, and about July 1, 1882, this contract was increased through Riday to $400. The defendant treats this as a renewal of the original contract and a new contract for the increase only. This, it seems to me, is a mistake. There is no proof of the time for which the original contract was to run. Presumptively it was for a year at the least. If so, the new contract was made before the original had expired, and the latter must be deemed to have been terminated by mutual agreement. It is undisputed, that all the advertising done by the defendant for Taylor & Sons, subsequently to July 5, 1882, was done under the $400 contract, and as the whole of that was secured by Riday, his claim for full commissions should be allowed.
Another class of contracts is represented by that of Charles Moser & Co. The original contract was not secured by Riday, but he increased it, and the defendant allows him full commissions upon the amount of increase, but none upon the original amount. This is correct. • Plaintiff’s agreement with Allison did not provide for the payment of commissions except upon “ new advertising” secured by plaintiff, and upon “renewals of advertising originally secured by him.” I do not think that these contracts can fairly be considered as contracts for new advertising, except to the extent that they were increased by Riday.
The plaintiff is entitled to judgment for $2,318.98, besides interest.