BENEDICT M. GOLDSMIDT *vs.* TRUSTEES OF THE FIRST METH-- ODIST–EPISCOPAL CHURCH IN WORTHINGTON.

### July 22, 1878.

Pledge of Notes with Power of Sale—Notice to Pledgor of Sale.—Under a-. pledge of promissory notes, with the agreement between pledgor and' pledgee, that if the debt for which the notes are pledged is not paid at maturity, the latter may make the money out of them in the best way he· can, and that he may sell the notes for that purpose, the pledgee cannot sell the notes without notice to the debtor to redeem, and of the time and' place of sale. A notice, after the debt matures, that if it is not paid within a specified time, the pledgee will make the best disposition he can of the notes to raise the money, either by public or private sale, is. not sufficient.

Same—Purchaser with Notice—Blank Endorsement.—A purchaser from the· pledgee, with notice that the notes are merely held by him in pledge, is. not protected by the fact that the pledgor, at the time of making the- pledge of the notes, endorsed them in blank.

Plaintiff brought this action, in the district court for No-- bles county, praying that certain notes made by defendant,. and of which plaintiff was assignee, and of which the defend-- ant had acquired possession by purchase from a pledgee of. plaintiff's assignor, might be surrendered to him; that the: purchase be declared a fraud upon him, and void; and that -the payment made thereon by the defendant be endorsed as a partial payment on the notes. The action was tried before

[*] *Henry* v. *Hinman*, 21 Minn. 378.    [REPORTER.

*Dickinson,* J., who found the facts as stated in the opinion, and ordered judgment for defendant.   A new trial was denied, and the plaintiff appealed.

*Emory Clark,* for appellant.

*Daniel Rohrer* and *Daniel Buck,* for respondent.

GILFILLAN, C. J.   The defendant is a religious corporation incorporated under Gen. St. *c.* 34, tit. 4, and located at Worthington.   By its trustees, it executed several promissory notes, dated July 1, 1873, but not delivered till February, 1875, payable to the order of A. P. Miller, at different times, for different sums.   They were executed to secure the purchase-money of real estate sold the corporation.   In February, 1875, Miller pledged five of these notes to one Bartlett, to secure a debt which he owed to Bartlett, and endorsed in blank and delivered them to Bartlett.

These notes fell due at various dates between July 1, 1876, and July 1, 1878, and the principals thereof amounted to $4,750.   Subsequent to the contract of pledging, Miller, for a part of the debt he owed Bartlett, executed to him a promissory note for $1,550, and it was then agreed between them that if such note was not paid at maturity, Bartlett might make the money out of the pledged notes in the best way he could, and that he might sell the same for that purpose. This note to Bartlett fell due in August, 1875, and was not paid, and Bartlett thereupon notified Miller by letter that if it was not paid within ten days. he would make the best disposition he could of the pledged notes to raise the money, either by public or private sale.   In January, 1876, Miller assigned the pledged notes to plaintiff.   At an informal meeting, at which were present a majority of the defendant's trustees, it being understood that the pledged notes could be bought from Bartlett for about $1,700, it was agreed that the notes should be bought, and the funds which defendant had on hand used in paying for them, so far as such funds would go, one of the trustees agreeing to advance the remainder. In December, 1875, this trustee concluded with an agent of

Bartlett, in whose hands the notes were for sale, a contract for the purchase of them at about $1,700, there being then due on the notes about $5,000, and the consideration for such purchase was paid at different times, partly with the funds of the corporation, and partly with money furnished by three of the defendant's trustees. Upon the point whether the trustee or trustees purchased individually, the finding of the court below is rather indefinite and confused. It is, that in making the purchase, the three trustees who advanced the money in excess of the funds of the corporation used for the purpose, were personally interested, and assumed and intended to act as individuals, and not as trustees of the church, and then proceeds: "The evidence upon this point of the case does not sufficiently disclose the whole transaction to enable the court to find distinctly and satisfactorily the entire facts. I am led, however, to the conclusion, and find as matter of fact, that although Sater, Sutton and Bigelow (the purchasing trustees) made the purchase as individuals, then having, perhaps, no legally delegated authority to represent the church as a corporation, yet they made such purchase with the intent and understanding that it should enure to the benefit of the defendant, whose funds they used for such purpose, and that the purchase was really made on account of and in behalf of the defendant, and that it was subsequently understood, by the trustees of the defendant, to have been so done, they having acquiesced in, and thereby ratified, such appropriation of trust funds." We infer from this finding that the three trustees supposed they had authority to make the purchase for the corporation, and that they made it assuming to act under that supposed authority, and, their act being ratified by the corporation, it must stand as the act of the corporation. At the time of the purchase, the three trustees knew that the notes were held by Bartlett as collateral security merely. No notice of the time and place of sale, nor of his intention to sell, except by the letter we have referred to, was ever given by Bartlett.

The first question in the case is, had Bartlett the right to sell at private sale, and without any notice to Miller of the time and place of the sale?

The pledge of personal property, to secure a debt, generally vests in the pledgee the power to make the money by a sale of the property, without a decree of court. It has been affirmed that this power to sell does not attach to a pledge of negotiable paper. *Wheeler* v. *Newbould,* 16 N. Y. 392. It is not necessary to decide the point in this case, for, by the agreement between the pledgor and pledgee, the latter was authorized to make the money out of the notes pledged, in the best way he could, and sell the same for that purpose. So that, so far as the power to sell was concerned, the pledge was put upon the same footing as though the law had, as in case of a pledge of other property, attached such power to sell. In case of a debt pledged, the pledgee may receive payment of the debt, and may sue for and collect it. *White* v. *Phelps,* 14 Minn. 27. To receive payment, to sue for and collect, and to sell, are the only ways in which the money can be made out of pledged negotiable paper; and the agreement between the pledgor and the pledgee in this instance authorized the pledgee to resort to either of them, and he resorted to the latter. It was competent for the parties to agree how the sale should be made; but without any such agreement, and where the power to sell is merely given, the power will be construed to be such a power as exists in respect to pledges generally, and must be exercised in the same way. In respect to pledges generally, the power can be exercised only upon reasonable notice to the debtor to redeem, and of the time and place of sale. *Wheeler* v. *Newbould,* 16 N. Y. 392; *White* v. *Phelps,* 14 Minn. 27; *Stearns* v. *Marsh,* 4 Denio, 227; *Cortelyou* v. *Lansing,* 2 Caines Cas. 200. This notice is essential to secure fairness in the transaction, and to enable the pledgor to protect his interests.

The notice in this case, was only of an intention to sell, without specifying time or place, and was similar to that in

*Wheeler* v. *Newbould*, concerning which the court said, "if the creditor does no more than give the notice of his intention to sell, without saying when or where, or in what manner, he deprives the debtor of a substantial right which the notice is designed to secure." It was insufficient, and did not justify the sale. The court below was of that opinion, but held that the notes having been endorsed in blank by the payee Miller, the purchasers from Bartlett, whether the trustees or the corporation, came within the protection accorded to *bona-fide* endorsees of negotiable paper. This would be so, were it not for the fact that the purchasing trustees, at the time of the purchase, knew that Bartlett held the notes as a pledge to secure the debt from Miller, knew, in effect, that his interests, and rights, and power over the notes were not those of an ordinary endorsee in the usual course of business, but those of a pledgee, and that his power to sell depended on his having given the proper notice. Having this notice, the blank endorsement cannot protect them in purchasing at a sale which the holder of the notes had no right to make. Notwithstanding such sale, the notes are still the property of the plaintiff.

Order reversed, and new trial ordered.