THOMAS D. TAYLOR v. TIMES NEWSPAPER COMPANY.[1]

June 21, 1901.

Nos. 12,594—(149).

## Sale of Secret—Preliminary Agreement—Action.

Plaintiff and defendant engaged in negotiations looking to the sale by plaintiff to defendant of a secret plan for procuring newspaper advertisements. A preliminary agreement was made and entered into between them, by which plaintiff submitted his plan to defendant for examination and inspection, upon its agreement that, in the event of a failure of the parties to conclude a final agreement, if it should make use of the same in its business without plaintiff's consent it would pay therefor forty per cent. of its gross receipts for all advertising run in its paper during the first year, twenty per cent. during the second year, and ten per cent. during the third year. Defendant examined the plan, but concluded not to complete the contract for its purchase, whereupon, and at a later date, plaintiff brought this action for an accounting, alleging that subsequent to the conclusion of the preliminary negotiations defendant adopted and made use of the plan in its business without his consent. It is *held* that the action was properly based upon the preliminary agreement for an accounting.

## Damages for Breach—Construction of Contract.

Whether the amount stipulated in a contract to be paid by one of the parties thereto in case of his failure to comply with the terms thereof is to be treated as liquidated damages or as a penalty is to be determined from the language of the contract, the nature of the breach and extent of the actual damage, all facts and circumstances under which it was made, and the evident intention of the parties.

## Same—Liquidated Damages.

If the actual damages resulting from a failure to comply with such a contract are definitely fixed by some rule of law, and may be easily determined and ascertained by the application of appropriate rules of evidence, and the sum stipulated in the contract is greatly out of proportion to the actual pecuniary injury, the sum named is to be treated as a penalty, and the injured party put to the proof of his actual loss. But where the damages are uncertain, speculative, and difficult of ascertainment, and the contract furnishes no data, the sum named therein is

[1] Reported in 86 N. W. 760.

ordinarily to be treated and held as liquidated damages. Within these rules, it is *held* that the sum named in the contract involved in this action is to be treated as liquidated damages, and not as a penalty.

Same.

Contract examined and construed with reference to the question of plaintiff's damages in other respects.

Action in the district court for Hennepin county for an accounting. The case was tried before Elliott, J., who, at the close of plaintiff's testimony, granted a motion by defendant to dismiss the action. From an order denying a motion for a new trial, plaintiff appealed. Reversed.

*Charles Butts* and *E. R. Holcombe*, for appellant.

*A. B. Jackson*, for respondent.

BROWN, J.

Action for an accounting. The cause was dismissed in the court below after plaintiff had rested his case, and plaintiff appeals from an order denying a new trial.

The facts, concisely stated, are as follows: Plaintiff, claiming to have originated a plan for increasing the advertising business of newspapers, solicited defendant to purchase it for a specified consideration. Not being familiar with the plan, defendant agreed to examine it, and, if satisfied of its merits, to purchase the right to use it, whereupon the parties entered into a preliminary agreement, the material portions of which are as follows:

"We hereby agree that if, after you have submitted your plan for development of classified advertising in the Minneapolis Times, we decide to adopt it, we will enter into formal contract with you, on terms to be mutually agreed upon, before putting your plan into operation. However, should we without your permission at any time within two years use any part of it, even if modified somewhat in form, we agree to pay you the commission which you ask for the plan,—forty per cent. on gross receipts for all classified advertising run in all editions of our paper during first year, twenty per cent. during the second year, and ten per cent. during third year. If, after going into details, we do not think your plan suited to our needs, we will so inform you at once, so that you may open negotiations with any other newspaper in this city. We further agree not to give to anyone directly or indirectly connected

with or interested in any newspaper outside of this city any of the details of your plan."

Upon signing and delivering this preliminary agreement, defendant received and examined the plan, and, deeming it of no merit, returned it to plaintiff, with the statement that it did not care to complete the contract of purchase. This action was subsequently brought, upon the claim of plaintiff that defendant had adopted and made use of the plan in its business; an accounting is asked of all advertising run in defendant's newspaper from and during the time it so used it; and a recovery is demanded for the amount stipulated to be paid by the terms of the agreement. As stated, at the close of plaintiff's case the court below dismissed the action on motion of defendant. The ground of this ruling was that the plaintiff had mistaken his remedy; that he should have brought, instead of an action for an accounting based upon the contract, an action for damages for its breach.

Counsel for defendant contends in this court that the preliminary contract upon which the action is founded was never executed by the defendant corporation, or, rather, that the evidence is insufficient to show that the officer who signed and executed it had authority to do so, and denies that defendant violated the terms of agreement by adopting or making use of the plan, and also claims that the contract is void, within the statute of frauds, because by its terms it is not to be performed within one year. The preliminary agreement was entered into on behalf of defendant by its superintendent of advertising, McConn. While the evidence is not clear with reference to his authority, it is sufficient to raise an issue of fact, and to require a finding upon the question one way or the other. And the evidence is also sufficient to require a finding upon the question whether defendant made use of the plan subsequent to the making of the preliminary agreement. The court should have found on both of these issues, and, if in plaintiff's favor, proceeded with the question of damages. We do not regard the claim that the contract is void, within the statute of frauds, as worthy of any very serious consideration. Contracts held void under the first subdivisions of G. S. 1894, § 4209, are such

only as cannot, by their terms, be performed within a year; and the contract or preliminary agreement here under consideration does not come within that class. It was not necessary that the consideration therefor be expressed in writing.

We come, then, directly to the principal questions in the case, namely: (1) Whether the action was properly brought upon the contract; and (2) whether the sum stipulated therein to be paid by defendant in case it adopted or made use of the plaintiff's plan in its business should be treated as liquidated damages, or as a penalty.

The agreement between the parties expressly provided for the submission of the plan to defendant for inspection and examination, and that, should defendant make use of it in its business, even in a modified form, without the consent of plaintiff, it agreed to pay forty per cent. on gross receipts for all classified advertising run in all editions of its paper during the first year, twenty per cent. during the second year, and ten per cent. during the third year. The theory of the complaint is that defendant did make use of the plan submitted to it, and that by reason thereof it incurred a liability to pay the damages specified, and it is upon this agreement that the action is founded. We have no doubt of the correctness of plaintiff's position in this respect. The right of recovery, if any exists, is upon the agreement of defendant to compensate plaintiff in case it should adopt or employ his plan in procuring advertisements for its paper. And we think the court below was in error in holding that the action should have been one for damages for a breach of the contract. The only breach we discover from the pleadings or the evidence is in defendant's failure to pay for the use of the plan the stipulated per cent. provided for. So it must be held that the action was properly brought for an accounting.

This brings us to the most important question in the case, namely, whether the sum stipulated by the contract is to be treated as liquidated damages, or as a penalty. If the sum so fixed is to be held as liquidated damages, the plaintiff is entitled to recover that sum, if defendant made use of the plan; but, if the sum so named is to be treated as a penalty, then the action was properly

dismissed, and the order appealed from should be affirmed, because plaintiff failed to prove any actual damages. The solution of the question whether the amount stipulated in a contract to be paid in case of a failure of compliance therewith is to be treated as an agreement for liquidated damages or as a penalty is often attended with much difficulty. The question is to be determined in every case from the language of the contract, the evident intent of the parties, and all facts and circumstances under which the contract was made. Kemp v. Knickerbocker, 69 N. Y. 45.

An important matter for consideration as bearing on the question is whether the actual damages resulting from a failure to comply with the contract are definitely fixed by some rule of law, and may be easily determined and ascertained by the application of appropriate rules of evidence. If they are, and the sum named in the contract is greatly out of proportion to and much larger than the real damage, courts uniformly hold the stipulated sum a penalty, and require the party asserting injury to prove his actual loss. But where the actual damages are uncertain and difficult to ascertain or prove, are of a purely speculative character, and the contract furnishes no data for their ascertainment, the sum named and fixed by the parties for its breach is to be treated and held as liquidated damages. Cotheal v. Talmage, 9 N. Y. 551; Chase v. Allen, 13 Gray, 42; Keeble v. Keeble, 85 Ala. 552, 5 South. 149. In such cases the parties are presumed to have taken the uncertain and speculative character of the damages into consideration in entering into their engagements, and to have agreed upon the definite sum for the purpose of putting the question beyond controversy and dispute. Cotheal v. Talmage, supra. The inference of the law in all cases is that the parties intended to provide a reasonable remuneration for the failure of performance, and, in construing the provision fixing a definite and specific sum therefor, this fact must not be lost sight of. In cases where the sum stipulated is exceedingly large and greatly disproportionate to the real damages, and the actual damages may be readily ascertained, the law, in the interests of justice, reduces the parties to an equality, by compelling them to litigate their pecuniary difference on a basis of fair compensation; and

this, too, without regard to the express language of the contract. Horner v. Flintoff, 9 Mees. & W. 678; Yenner v. Hammond, 36 Wis. 277; Lampman v. Cochran, 16 N. Y. 275; 1 Suth. Dam. 498; 13 Am. & Eng. Enc. (1st Ed.) 848, and cases cited there. It is not of controlling importance, where the actual damages are doubtful, speculative, and difficult of proof, that the amount stipulated is much larger than the apparent actual injury and loss. Bagley v. Peddie, 16 N. Y. 469; Hosmer v. True, 19 Barb. 106; Cushing v. Drew, 97 Mass. 445. Such fact, however, is always to be considered, but is specially significant only in those cases where the damages may be readily ascertained by the application of definite and certain rules of law.

In the case at bar plaintiff represented to defendant that he had discovered or originated a plan by which the advertising for newspapers could be materially enlarged, and the parties dealt with each other on the theory and supposition that the proposed plan was one of substantial merit and worth in such matters. If the defendant wrongfully made use of it, as the evidence tends to show it did, we do not know what rule of law or evidence could be applied or adopted as a guide for ascertaining the damage plaintiff may have suffered, if the parties are not bound by the amount fixed and determined by the contract. Plaintiff was deprived of no tangible property, with definite or ascertainable value, but of a mere trade or business secret, of no known worth.

The case of Bagley v. Peddie, supra, is, on principle, very similar to the case at bar. In that case it appeared that the bond there involved was conditioned for the payment of the sum of $3,000 as liquidated damages for the failure to perform the covenants of a written agreement. The written agreement did not provide for a payment of money, or for the doing or omitting of any other act, the damages resulting from which could be ascertained from data furnished by the instrument itself, and the actual damages were uncertain and difficult to ascertain. One of the agreements alleged to have been violated was that the obligor should not reveal the secrets of a trade in which he was to be employed, or any invention or improvement that might be made by his employer. It was there held that the breach of this agreement

involved damages so uncertain and difficult to ascertain that the sum named in the bond should be deemed liquidated damages. That case was followed and applied in Tode v. Gross, 4 N. Y. Supp. 402. In the latter case defendant, a married woman, owned a factory for the manufacture of a certain kind of cheese, and sold it, together with the secret for its manufacture, to plaintiffs in the action, covenanting for herself and husband not to reveal or impart the secret to any other person; and it was held that for a violation of the contract the parties were liable for the penalty of $5,000, as liquidated damages. This subject will be found very fully treated in 13 Am. & Eng. Enc. (1st Ed.) 847, et seq., where the authorities are collected, and many of them analyzed. Our conclusion on this branch of the case is that the sum stipulated in the contract must be treated as liquidated damages.

In view of another trial of the action, it is proper to place a construction upon the terms of the contract with respect to what particular advertising plaintiff is entitled to recover. The language of the contract is that if defendant makes use of the plan, either as submitted to it or in any modified form, it shall pay to plaintiff forty per cent. of its gross receipts for all classified advertising run in its paper. The question naturally arises in this connection whether the plaintiff is entitled to forty per cent. of all advertising run in defendant's paper, without regard to whether such advertising was secured as the result of the use of plaintiff's plan. We construe this contract, in its immediate connection, to mean, and the parties, no doubt, contemplated and intended, that defendant should pay, as a remuneration for the use of the plan, a per cent. upon the gross receipts of all advertising secured by it as a result of its use, and the plaintiff is entitled to recover a percentage only to the extent of the special benefits resulting therefrom. This is in harmony with the undoubted intention of the parties, and in consonance with the justice of the case. Plaintiff believed he had a plan which would materially advance the interests of defendant in the matter of procuring advertising, and defendant, in contracting with him, acted on the assumption that the use of his plan might result in substantial benefit. So, if the plan was made use of by defendant, as claimed

83 M.—34

by plaintiff, and resulted in substantial and pecuniary benefit to it, a liability exists, to the extent of the compensation stipulated in the agreement, but not beyond the increased volume of business directly attributable to the use of the plan.

Order reversed