THOMAS D. TAYLOR v. TIMES NEWSPAPER COMPANY.[1]

February 13, 1903.

Nos. 13,329—(251).

**Sale—Stipulated Damages.**

In an action to recover the amount of stipulated damages provided in a contract for the purchase and sale of a plan for securing and publishing classified advertisements, *held*:

1. Although the essential feature of the scheme was not originated by the seller, certain forms by which it was to be carried into effect were devised by him, and to that extent the subsequent use thereof by the purchaser was a use of the plan.

2. The seller is limited in the amount of damages to that percentage of the increase of gross revenues which resulted from the use of such particular forms.

Action in the district court for Hennepin county for an accounting. The case was tried before Brooks, J., who found in favor of plaintiff. From an order denying a motion for a new trial, defendant appealed. Affirmed.

[1] Reported in 93 N. W. 659.

*A. B. Jackson*, for appellant.

*Charles Butts* and *E. R. Holcombe*, for respondent.

LEWIS, J.

In November, 1898, plaintiff represented to defendant that he had originated a plan for securing classified advertisements by publishers of newspapers, which, if adopted by defendant, would enable it to obtain permanent supremacy among newspapers in the city of Minneapolis as an advertising medium, and greatly increase its revenue. Thereupon defendant executed and delivered to plaintiff the following agreement:

"We hereby agree that if, after you have submitted your plan for development of classified advertising in the Minneapolis Times, we decide to adopt it, we will enter into formal contract with you, on terms to be mutually agreed upon, before putting your plan into operation. However, should we, without your permission, at any time within two years use any part of it, even if modified somewhat in form, we agree to pay you the commission which you ask for the plan,—forty per cent. on gross receipts for all classified advertising run in all editions of our paper during first year, twenty per cent. during the second year, and ten per cent. during the third year. If, after going into details, we do not think your plan suited to our needs, we will so inform you at once, so that you may open negotiations with any other newspaper in this city. We further agree not to give to any one directly or indirectly connected with or interested in any newspaper outside of this city any of the details of your plan. We further agree not to make, nor permit any one else to make, a copy of any part of your plan, should we reject your proposition; in which event the plan and all papers sent us pertaining to it are to be immediately returned to you."

Upon execution of the agreement plaintiff delivered to defendant the so-called plan, which, after examination of it, defendant returned, notifying plaintiff that it had decided to not adopt or use the same.

This action was commenced in 1901, and the complaint charged that defendant, without plaintiff's permission, did make, and permit others to make, copies of the plan, and that from and after May 1, 1899, without plaintiff's consent, it had used and published the plan in all the issues of its paper, and received the benefits therefrom. The action was brought for an accounting according

to the percentage of gross receipts stipulated in the agreement. Upon the first trial of the cause it was dismissed by the trial judge, and upon appeal to this court the order was reversed, and the case sent back for a new trial. The opinion will be found in 83 Minn. 523, 86 N. W. 760, and that decision is final so far as the contract is construed.

Upon the new trial the court, in its findings, set out in detail the plan furnished by plaintiff, which consisted of a scheme to induce brokers and others to advertise property for sale and to let, to build up a "business chances" column, "rooms and board" column, "help and situation wanted" column, and "horses and carriages." As descriptive of the plan, the court found:

"That attached to said plan when so submitted to said defendant were certain papers or exhibits marked 'A' to 'R,' inclusive, of which 'A,' 'C,' 'F,' 'G,' 'H,' 'J,' and 'K' were forms of contracts or orders to be filled out and executed or given by those contracting for or ordering advertisements; and of which 'A,' 'D,' and 'L' were letters intended for use in the soliciting of business from advertisers; of which 'E' was a blank form upon which carriers were to make out lists of vacant buildings, etc., as shown in paragraph 1 of said plan; of which 'S' and 'T' were blanks to be used in keeping a record of classified advertisements; of which 'M,' 'N,' 'O,' 'P,' 'Q,' and 'R' were, respectively, headings or other matters or statements to be inserted in the newspaper as indicated in paragraph 8 of said plan. That each of said soliciting blanks or blank contracts or orders so attached to said plan embraced the terms of the contract to be made with advertisers, the essential feature of which was that the advertisement should be inserted in the newspaper for one month for one dollar, and, if the result sought to be obtained by the advertisement was not previously obtained, that thereupon the advertisement should, at the request of the advertiser, be continued a second month free of further charge; and if, within the second month, such result was not obtained, then that the advertisement, at the advertiser's request, should be continued a third month free of any additional charge, the newspaper to be promptly notified when the result sought to be obtained had been accomplished. * * * That said plaintiff originated and was the first person to prepare or use the forms of contracts, orders, and soliciting letters, copies whereof are attached to his said plan, and so submitted to said defendant, but said plaintiff never originated or discovered any other part thereof. And every essential feature of said plan, except the forms attached thereto, was known and in use by the proprietors and

publishers of newspapers before the time when plaintiff prepared his said plan. And, except as hereinafter stated, no part of plaintiff's said plan has ever been used by the defendant which had not been adopted and used thereby before it entered into said contract with said plaintiff. And said defendant never copied or permitted any other person to copy plaintiff's said plan, or to get any of the details of the same."

The court also found that in May, 1899, the defendant purchased from one Sherin, for $300, and without examination or knowledge of its character, a plan for the obtaining and publication of classified advertising, which is set out in full in the findings; that the forms attached to the Sherin plan had been used by other newspaper publishers with suitable changes and variations; that in June, 1899, defendant caused to be printed blank orders and soliciting letters, which were copies of those attached to the Sherin plan, with such modifications as made the same suitable for its business, and thereafter used such blanks in securing classified advertisements for its paper; that such forms consisted of five different blank orders, and were appropriate for use in ordering or directing the insertion of advertisements under the various headings; also that four different forms of blanks, soliciting letters, or circulars were printed and used by the defendant, and that such blanks so printed and used were without the consent of plaintiff, and by such use defendant increased its gross receipts from classified advertisements over and above what the same would otherwise have been; and, as a conclusion of law, ordered that an accounting be taken between the parties for the purpose of ascertaining the amount of the gross receipts, as increased by the use of such forms, and that, when the amount was ascertained, judgment be entered for plaintiff.

From an order denying a motion for a new trial the cause was brought to this court, and the following errors were assigned:

"The court erred in finding as a fact that the use of the blanks mentioned in the findings increased defendant's gross receipts from classified advertisements over and above what the same would otherwise have been, and such finding of fact was not justified by the evidence.

"The court erred in finding as a fact that the plaintiff originated and was the first person to prepare or use the forms of contracts,

orders, and soliciting letters, copies whereof are attached to his said plan, and such finding was not justified by the evidence.

"The court erred in denying defendant's motion to dismiss the case after plaintiff had rested, on the ground that the evidence introduced by plaintiff did not tend to establish the cause of action set out in the complaint, or any cause of action.

"The court erred in its first conclusion of law, and the same was not justified by the findings of fact."

There was dispute as to who was the originator of the so-called plan, and, while the court finds that respondent was not the originator of the essential features of the scheme, yet there was evidence tending to show that he devised some of the particular forms by means of which the scheme was to be worked out. The evidence may not definitely show any substantial increase in appellant's gross profits because of those particular forms, yet there was evidence to the effect that by reason of the new scheme, as adopted in May, 1899, and used by appellant, a material increase was obtained in the circulation of its paper, and some increase in its revenue. The amount of such increase traceable to the forms devised by respondent will be a matter for future determination when the accounting is had. We hold, with some hesitation, that the evidence is sufficient to support the finding that appellant adopted some part of the plan.

Respondent, in framing the pleadings and at the trial, evidently proceeded upon the theory that he was entitled to recover his percentage of the gross increase in revenue caused by the entire scheme in use by appellant, but, the trial court having eliminated from respondent's claim all idea of originality in the essential features of the scheme, and having limited respondent's discovery to the particular forms mentioned in the findings, did those forms in fact constitute a part of the plan? If the forms amounted to no more than the style of the letters or circulars, we are unable to see how they could constitute a part of an original plan for securing classified advertising, but, if the forms were especially and peculiarly adapted to carry into effect the scheme, then to some extent they might be considered a part of such plan. If the whole set of blanks furnished by respondent had been appropriated by appellant, there could be little doubt that the method of applying

the scheme by the use of such forms would constitute a part of the plan. But appellant having made use of only a portion of the letters and circulars, and respondent not being entitled to any credit for the essential features thereby presented, makes it a close question whether such forms constitute a part of the plan. Considering the peculiar method devised by the letters and circulars to attract the attention of advertisers, we conclude that the trial court was correct in holding that the plan had been used by appellant to the limited extent mentioned. The contract was correctly construed by the trial court, and respondent is limited to the percentage of such increase in the revenue as he can show to have been the result of using his forms.

Order affirmed.