# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF MINNESOTA.

---

LUCY C. PALMER and Another v. MUTUAL LIFE INSUR-
ANCE COMPANY OF NEW YORK.[1]

February 24, 1911.

Nos. 16,751—(164).

**Insurance policy — pledge — chattel mortgage.**
  The transaction mentioned in the opinion, by which the holder of a paid-
up life insurance policy delivered the possession thereof to the issuing com-
pany as security for the payment of a loan. *held* a pledge of the policy, and
not a chattel mortgage.

**Action on policy — debt to insurer — pleading and proof.**
  In an action to recover upon a life insurance policy, matured by the death
of the insured, it is not necessary, in order to maintain the action, to plead
or prove the payment or tender of a loan as security for which the policy
was pledged to the company. All such indebtedness may be interposed by
the company as a counterclaim or set-off.

**Enforcement of pledge.**
  The parties to a contract of pledge may by agreement provide the manner
and method for the enforcement of the same, provided the method agreed
upon be not in violation of law.

[1]Reported in 130 N. W. 250.
    114 M.—1.

**Failure to pay loan — validity of agreement to cancel.**

A paid-up policy of life insurance for $5,000 was pledged to the issuing company by the insured as security for the payment of a loan made to him by the company. The contract provided that, in case of the failure to make payment of the money at the time it became due, the company might, without notice, cancel the policy by applying the "customary cash surrender consideration then allowed by the company for the surrender for cancellation of similar policies, namely, $1,445," to the payment of the loan, paying the balance, if any, to the insured. The loan was not paid, and the company canceled the policy in the manner provided for by the contract. It is *held:*

(a) That if the "customary cash surrender consideration" represented the substantial value of the policy, the contract was valid, and the cancellation effectually terminated the rights of the insured therein.

(b) But if the customary cash surrender consideration so agreed upon as the basis for cancellation was substantially less, and substantially disproportionate to the actual value of the policy, the contract imposed upon the insured a penalty for his default, and, in so far as it authorized a cancellation, is void.

**Allegations of surrender — value — issue of fact.**

The allegations of the complaint in reference to the agreed surrender value and the actual value of the policy *held* to present a question of fact.

Action in the district court for Ramsey county by the executrix and the administrator with the will annexed of the estate of Timothy R. Palmer, deceased, for an accounting of all dividends earned prior to October 30, 1905, upon a certain policy issued by defendant; to recover $5,000, payable according to the terms of the policy, and in addition all dividends to which the policy should be found to be entitled, less the sum of $1,445. The facts are stated in the opinion. From an order, Bunn, J., sustaining defendant's demurrer to the complaint, plaintiffs appealed. Reversed.

*H. A. Hageman* and *How, Butler & Mitchell,* for appellants.
*Ambrose Tighe,* for respondent.

BROWN, J.

Appeal from an order sustaining defendant's general demurrer to plaintiffs' complaint. The facts, as disclosed by the complaint, briefly stated, are as follows:

Timothy R. Palmer was in his lifetime, and at the times hereafter stated, the holder of a paid-up policy of life insurance for the sum of $5,000, issued to him by defendant, and payable at the death of Palmer to his estate. On July 14, 1904, after the policy became fully paid, Palmer applied to defendant for a loan, pledging the policy as security for its repayment. The defendant loaned him the sum of $1,445, which Palmer promised to repay on September 1, 1905, with interest at the rate of five per cent. per annum. Interest thereon for one year $81.68, was paid in advance, and the actual amount paid over to Palmer was $1,363.32. In consummation of the transaction the parties entered into a written contract evidencing the obligations, rights, and liabilities of each, of which the following is a copy:

"This agreement, made this 14th day of July, 1904, between the Mutual Life Insurance Company of New York, party of the first part, hereinafter called the company, and Timothy R. Palmer, party of the second part, witnesseth:

"The company agrees to loan to the party of the second part the sum of fourteen hundred and forty-five dollars, apportioned as follows:

To pay premiums on policy No...................

Interest at 5 per cent. (adjusted also for interest on premiums) ................................. $    81  68

Balance by company's check .................... 1,363  32

                                                                 $1,445  00

"The receipt of the foregoing amount as a loan is hereby acknowledged upon the pledge as hereinafter set forth of policy No. 306,404 in said company. And the said party of the second part agrees to repay the said sum of $1,445.00 to the company at its head office, Nassau, Cedar and Liberty streets, in the city of New York, on the 1st day of September, 1905.

"In consideration of the amount of said loan, the party of the second part hereby assign, transfer, and set over all of his right, title, and interest in and to said policy No. 306,404, issued by said company on the life of Timothy R. Palmer, together with any and all

moneys which may be or become payable under the same, to the company as collateral security for the payment of said loan with interest. The said party of the second part will forever warrant and defend the title of the said company to the said policy.

"In the event of default in the payment of said loan on the date hereinabove mentioned, the company is hereby authorized at its option, without notice, and without demand for payment, to cancel said policy, and apply the customary cash surrender consideration then allowed by the company for the surrender for cancellation of similar policies, namely, $1,445, to the payment of said loan with interest, the balance, if any, to be payable to the parties entitled thereto on demand, or the company may, at its own option, renew the said loan for one year or less period on the written request of any one of the parties of the second part hereto, and without further notice to any one of the parties of the second part."

Palmer failed to pay the debt at maturity, or at all, and on October 30, 1905, sixty days after maturity thereof, defendant, without notice, exercised the right conferred by the loan contract, and canceled or forfeited the policy, subsequently notifying Palmer of the action in that respect. Palmer immediately protested, and demanded a reinstatement of the policy, which demand the defendant refused, except upon condition that Palmer pass a satisfactory medical examination and furnish a certificate thereof to defendant. This Palmer declined to do.

On December 3, 1908, Palmer died, and his executors brought this action to recover upon the policy, upon the ground that the attempted forfeiture and cancellation thereof by defendant was illegal and void; hence that the policy was still a valid obligation. The complaint further alleges that at the time the loan was made, and at the time of the forfeiture of the policy, defendant was required to and did maintain a reserve fund to meet its obligations under the policy in the sum of $2,216.85, and that the policy was at the time stated "of the actual value and worth of not less" than that sum of money, and that the policy could not be replaced in any other reliable insurance company for a less sum. It also alleges that defendant in fact held in reserve at the time of the cancellation of the

policy to meet its liability the sum of $2,278.70, and that the policy was in fact worth and of the value of that amount.

The loan agreement, as will be noticed, provided for the cancellation of the policy without notice, upon the nonpayment of the loan, and for an application of "the customary cash surrender consideration then allowed by the company for the surrender for cancellation of similar policies, namely, $1,445," upon the indebtedness, paying the balance, if any, to Palmer. In this connection the complaint further alleges that the difference between the cash surrender value of the policy, at the time of the cancellation, as computed by defendant for the purpose of making forfeiture, and the actual value and worth of the policy, was at least the sum of $906.70; that the loan agreement so far as it purported to authorize the cancellation of the policy, was usurious, and an attempt on the part of the defendant to impose a penalty or forfeiture, for the nonpayment of the debt, and therefore unlawful.

The action seems to have been submitted to the court below, on plaintiff's part, upon the theory that the loan transaction constituted a mortgage of the policy, and, inasmuch as the same had never been foreclosed, rights under the policy have not been extinguished; while in this court the contention is that it is immaterial whether the transaction amounted to a mortgage or a pledge, and that, because of the fact that the contract imposed a penalty for the nonpayment of the loan, it was unlawful, and the attempted cancellation thereunder ineffectual for any purpose.

The learned trial court was of the opinion, and so ruled, that the transaction constituted a pledge, and not a mortgage, and though the fact that a penalty, in excess of the legal interest, if thereby imposed, would render the contract void in so far as it authorized a forfeiture and cancellation of the policy for nonpayment, yet the complaint contained no allegations of fact tending to show that a penalty was so imposed. In other words, the court construed the allegations of the complaint to the effect that the policy had, at the time of the cancellation, an actual value largely in excess of the amount of the loan, as conclusions of law, and not allegations of issuable facts. Our conclusion, after a somewhat careful considera-

tion of the subject, is that the learned trial court erred in the construction of the complaint, and that the allegations thereof respecting the value of the policy present issues of fact, rather than conclusions of law. In view of this, and the fact that the case must be remanded for trial, we dispose of some of the questions presented and discussed in the briefs, to the end that the substantial issue may be tried and determined, without confusion from contentions upon minor points.

The question whether the loan transaction constituted a chattel mortgage, or a pledge of the policy, though not discussed by plaintiff, it being treated as immaterial, is urged by defendant, and it occurs to us that a determination thereof, if not strictly necessary, is highly important, to the end that the parties may know, when the cause comes to trial, what issues are in litigation. If the loan agreement be held a chattel mortgage, it would seem that the case is at an end, for there is no claim that it has ever been foreclosed in the manner prescribed by law, and the policy, the subject-matter thereof, remains in force. Manhattan Life Ins. Co. v. Wright, 126 Fed. 82, 61 C. C. A. 138. On the other hand, if the transaction took the form of and constituted a pledge, and the right of forfeiture therein provided for be valid, then the exercise of that right by defendant effectually terminated all rights of Palmer under the policy, and plaintiffs cannot recover. The question is presented by the demurrer, and for the reasons stated should be settled.

1. There is a marked distinction between a chattel mortgage and a pledge, though perhaps it has not always been strictly observed in particular cases. A chattel mortgage is a present transfer of title to the mortgaged property, with a defeasance. Upon the payment of the debt or the performance of the obligation secured, the title to the property reverts to the mortgagor. A pledge is a transfer of the possession of personal property, not the title, as security for the performance of some act by the pledgor, with provisions for the sale of the property or other disposition thereof by the pledgee upon the pledgor's default. It is often difficult to determine whether a particular transaction amounts to a mortgage or a pledge, and in such

cases the abstract form of the transaction usually controls the question.

In the case at bar there is language in the agreement indicating a present transfer of the policy, one of the essentials of a chattel mortgage; but this is not conclusive that the parties intended to enter into the relation of mortgagor and mortgagee. Jones, Pledges, § 9. The transfer of title was not upon condition, another essential element of a mortgage, and the transaction in fact took the form of a pledge; the policy being delivered as security for the repayment of the loan, with authority on the part of the pledgee to appropriate the same to its own use, by the cancellation thereof, on the pledgor's default. All the essentials of a pledge are here presented, and though some doubt may arise, when viewed from a strict application of legal definitions and rules, the law in such cases favors the conclusion that the transaction was a pledge, and not a mortgage. Jones, Pledges, § 14. We therefore hold with the trial court that the transaction here involved was a pledge.

2. The contention of the defendant, to the effect that, even though the policy has never been legally forfeited and canceled, and is still the valid obligation of defendant, plaintiffs cannot recover, except by showing a payment of the loan or a tender thereof, is not sound. If the policy is still in force, plaintiffs may recover the amount thereof, less the loan, with interest. The loan contract need not necessarily be held void in toto, as suggested by counsel, to authorize the action. It is clearly not entirely void. So far as it pledged the policy as security, it is a binding contract. The pith of plaintiffs' claim is that the rights of the insured have never been lawfully terminated; and that the provisions of the contract, in so far as authorizing a cancellation for nonpayment, imposed a penalty for the default, and in this respect, but not otherwise, that the contract was not enforceable, and the attempted cancellation a nullity, leaving the parties precisely where they were before the forfeiture was declared by defendant. If the action was one to recover the possession of the policy, then it might well be claimed that a tender of the debt would be necessary. 31 Cyc. 840. But the action being to enforce the liability under the policy, it having matured by the death of

Palmer, and not to recover its possession, no necessity for a tender is present, and is therefore unnecessary.

3. For the purpose of insuring the payment of the loan, and, in case of default, of foreclosing the rights of the pledgor in the pledged property, the contract in the case at bar provides for a forfeiture of the policy, and authorized defendant to cancel the same by applying the "customary cash surrender consideration then allowed by the company for the surrender for cancellation of similar policies, namely, $1,445," to the payment of the loan, paying the balance, if any, to the pledgor. The debt was not paid, and defendant exercised the right thus conferred, and canceled the policy. The general rule of the common law for the enforcement of pledge contracts, in the absence of special agreement otherwise providing, requires a sale of the property upon due notice to the pledgor and an application of the proceeds to the payment of the debt, the surplus, if any, going to the pledgor. The rule is, however, not of universal application, and does not apply to commercial paper, and perhaps other species of choses in action. But it is well settled that the parties may stipulate the terms and method of enforcement, and that agreements in this respect, not obnoxious to the law, will control the rights of the parties. Goldsmidt v. First Methodist-Episcopal Church, 25 Minn. 202; White v. Phelps, 14 Minn. 21 (27), 100 Am. Dec. 190; Upham v. Barbour, 65 Minn. 364, 68 N. W. 42.

Even this rule is not without its exceptions, for it has been held that an agreement that the pledgee may appropriate the property to the satisfaction of the debt is void and not enforceable. 31 Cyc. 863; Lucketts v. Townsend, 3 Tex. 119, 49 Am. Dec. 723; Livingston v. Story, 11 Pet. 351, 9 L. ed. 746.

The rule requiring the sale of the property cannot well be made applicable to a life insurance policy, pledged to the company issuing it as security for the payment of a loan; for, whether fully paid or not, it has no marketable sale value, and an attempt to thus dispose of it would be futile. So that some method of enforcement, other than a sale, or unconditional relinquishment of ownership by the pledgor, must be resorted to. A careful consideration of the subject leads to the conclusion that the remedy by cancellation at the

cash surrender value of the policy is not inconsistent with sound public policy or violative of the substantial rights of the pledgor. On the contrary, it is a reasonable and practicable method of bringing the contract to a final termination. Wilson v. Royal, 137 Iowa, 184, 114 N. W. 1051.

But a contract providing for that remedy should not be construed to vest in the pledgee the right arbitrarily to determine the value of the policy at a sum substantially less than its actual cash surrender value. Pledge contracts so construed have been held to impose a penalty for the nonpayment of the debt, and therefore void. New York v. Curry, 115 Ky. 100, 72 S. W. 736, 61 L.R.A. 268, 103 Am. St. 297; Emig v. Mutual, 127 Ky. 588, 106 S. W. 230, 32 Ky. Law Rep. 484, 23 L.R.A.(N.S.) 828. If the contract provides for an application of the actual cash surrender value of the policy to the payment of the debt, and the surplus to the pledgor, the result grants to the pledgor all that he is entitled to, and the law is in no sense offended. And if the "cash surrender consideration   *   *   *   allowed by the company," upon which the cancellation of the policy in question was based, was the actual cash surrender value, and not an amount arbitrarily fixed by defendant, without regard to the actual value, the cancellation of the policy was valid, and plaintiffs have no cause of complaint.

It is not conclusive that the parties by the contract agreed upon a surrender value of the policy. If the value so agreed upon resulted in fact in imposing upon Palmer a penalty for his default, the agreement is none the less invalid because assented to by him. While the law seldom interferes with the right of contract, and permits parties to enter into such agreements as their interests may seem to them proper, yet there are instances where the law steps in to prevent unfair and unreasonable advantage being taken by one of the contracting parties. Express agreements fixing an amount to be paid for the breach of a contract, if entered into fairly and without fraud, and the amount agreed upon be not greatly disproportionate to the actual loss sustained in consequence of the breach, are valid, and the courts uphold them. But where the agreed compensation for the failure of performance is out of all proportion to the loss

suffered, and the actual injury or damage may be readily ascertained and determined, not left to conjecture or speculation, the agreed amount is by the authorities treated as a penalty and not enforceable. 13 Cyc. 96, and cases cited; Taylor v. Times Newspaper Co., 83 Minn. 523, 86 N. W. 760, 85 Am. St. 473.

The rule is especially applicable to contracts between the necessitous borrower and the money lender. The determination of the question in the case at bar should be guided by this rule; and if it shall be made to appear with reasonable certainty that the sum of $1,445, the amount agreed upon as the surrender value, in view of all pertinent facts and circumstances, is substantially disproportionate to the actual value of the policy, the agreement for cancellation will fall within the rule of prohibited penalties, and fail of force or effect.

It is alleged in the complaint that the actual value of the policy exceeded the customary surrender value allowed by the company by several hundred dollars, and if these allegations be sustained by sufficient competent evidence on the trial, the result necessarily will be that defendant by the contract exacted of Palmer a penalty for his default which the law will not approve. The allegations of the complaint in this respect, though to some extent mingled with conclusions of law, present issues of fact, and the case must therefore go back for trial. We refrain from entering into a discussion of this phase of the case, in the absence of the evidence.

Nor do we deem it necessary to consider or determine the question, suggested in the briefs, whether defendant, in its relation to the policy as pledgee, occupied the position of trustee of an express or implied trust, and therefore charged with an observance of the principles of law applicable to that relation. The action does not rest upon the claim that defendant's legal or equitable obligations to Palmer, in the manner of the enforcement of the pledge, were in any way violated. The action rests entirely upon the alleged invalidity of the express agreement that the pledge might be enforced by cancellation of the policy for an amount far less than the actual value thereof. It is probable that, where no method of foreclosure is expressly provided for in transactions of this kind, a trust relation

might arise. But such is not this case. Nor do we consider the effect of Palmer's failure to take some action prior to his death, looking to a reinstatement of the policy. His neglect in this respect would not bar the action, unless of a nature to bring into operation the doctrine of estoppel. The evidence is not before us, and we pass the question without further remark.

Order reversed.

On March 10, 1911, the following opinion was filed:

Per Curiam.

Upon consideration of defendant's application for a rehearing, based in the main upon the contention that the court erred in construing the complaint to present an issue of fact, and not a mere conclusion of law, we adhere to the former opinion. We are unable to construe plaintiffs' contention that the allegations of the complaint "entitle the plaintiffs to introduce proof for their support," and that it is "open to the plaintiffs under this allegation to show, as bearing upon the question of value, that the cash surrender value, computed according to the customary practice of the company, * * * was very largely in excess of that fixed in the contract," as a concession that the only question presented is whether the alleged excess value of the policy was *because* of the reserve maintained by the company. While counsel for plaintiffs contended that the reserve was the true test as to value, we are not justified, in view of the other contentions, in assuming a concession on their part that the whole case rested upon that point.

A second reading of the portion of the opinion which counsel for defendant seems to think involves some reflections upon his client, or upon the merits of the case, will disclose to him the fact that the court was there discussing or stating an abstract proposition of law, without suggestion or intimation that the evidence, when brought out, might bring the case within it.

Application for rehearing denied.